**Kurt C. KARBUSICKY, Plaintiff,**

v.

**The CITY OF PARK RIDGE,
a municipal corporation,
Defendant.**

No. 94 C 6848.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 22, 1997.

---

Richard J. Reimer, Brent M. Christensen, Sklodowski, Franklin, Puchalski & Reimer, Chicago, IL, for Plaintiff.

Elizabeth Ann Knight and Kathryn M. Reidy, Knight, Hoppe, Fanning & Knight, Ltd., Des Plaines, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff, Kurt C. Karbusicky ("Karbusicky") has filed a one-count complaint against defendant, City of Park Ridge ("City"), alleging that defendant violated section 107(a) of the Americans with Disabilities Act, 42 U.S.C. § 12117 (the "ADA"), when it reassigned plaintiff from his job as a Park Ridge police officer to a Park Ridge community service officer ("CSO"). Defendant has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, the court grants defendant's motion.

### Facts [1]

Plaintiff has a congenital total hearing loss in his left ear and is unaware of any medical procedure or device to correct his hearing impairment. Despite his hearing loss, plaintiff has been able to function in various activities throughout his life. As a student, plaintiff did not have problems hearing in the classroom; he would compensate for the loss of hearing in his left ear by sitting closer to the teacher and by turning his head so that his right ear faced the teacher. Plaintiff's hearing impairment also did not preclude him from serving in the military. Plaintiff attended Northern Illinois University and, while in college, served in the National Guard. The National Guard knew of plaintiff's hearing loss. Then, from 1986 through 1988, plaintiff went on active duty with the United States Marines ("Marines"). The Marines also knew of plaintiff's hearing loss and examined him for his impairment. Plaintiff contends that neither the Marines nor the National Guard classified him any differently because of his hearing loss.

After his duty with the Marines, plaintiff applied for the position of police officer with defendant. In the application process, plaintiff disclosed that he suffered from a congenital total hearing loss in his left ear. Plaintiff also stated that he had formerly served with the National Guard and Marines. Plaintiff took defendant's physical examination and passed. on October 13, 1989, plaintiff was hired as a Park Ridge police officer. Thereafter, plaintiff passed defendant's field training officer program and two-year probationary period.

---

1. The uncontested facts are taken from the parties' Local Rule 12(M) and 12(N) statements.

On October 16, 1992, Commander Kaderabek of the Park Ridge Police filled out an annual performance evaluation for plaintiff. Kaderabek stated that plaintiff was creating problems in officer safety because of the hearing loss in his left ear. Kaderabek based his report on observations that plaintiff had missed radio calls and had had difficulty hearing in various circumstances. Specifically, Kaderabek documented:

> Although officer maintains good defensive practices and adheres to proper safety training, officer's inability to hear out of one ear causes hazardous situations for the officer and his fellow officers. Officer Karbusicky is a young, enthusiastic and energetic officer.... Officer Karbusicky's hearing continues to be a problem in the area of officer safety and his inability to hear radio calls and normal conversation when mixed with extraneous noise.

Based on this report, the Director of Public Safety for the City of Park Ridge, John Baudek, requested that plaintiff have his hearing evaluated by Dr. James Cambell. On October 29, 1992, plaintiff visited Dr. Cambell, who confirmed that plaintiff had a profound sensorineural hearing loss in his left ear and normal hearing in his right ear. In a letter dated November 5, 1992, Dr. Campbell stated that plaintiff's hearing loss is permanent and is not correctable with surgery or medication; he advised plaintiff to obtain a CROS hearing aid, which "would allow [plaintiff] to have hearing from both sides, and would help prevent hazardous situations in his work because he could localize sound better."

Thereafter, plaintiff obtained and wore a CROS hearing aid while working on the streets as a police officer. Yet, plaintiff felt that the device did not help him and that, in fact, it created more hearing problems for him than he had without the device. Plaintiff returned to see Dr. Campbell several times, and Dr. Campbell's office sent the hearing device back to the manufacturer at least twice. On March 18, 1993, Lynn Anderson, an audiologist associated with Dr. Campbell's office, evaluated plaintiff. Plaintiff informed Anderson that the CROS hearing aid had not improved his hearing. Anderson and an audiologist at Lutheran General Hospital suggested that plaintiff try the CROS–Plus hearing aid to improve his hearing.

After discovering that the CROS hearing aid failed to improve plaintiff's hearing performance, Deputy Chief Colangelo wrote a letter dated March 26, 1993, which plaintiff received and which offered plaintiff the following options:

*Option Number One:* On your own and at your own expense, acquire the hearing device that Lutheran General Hospital said may benefit your hearing. If you chose [sic] this option, I will put you in a light duty capacity for a reasonable amount of time so that adequate testing and adaptation of the device can be made. A further determination would be made after that period.

*Option Number Two:* Seek a disability pension with the police pension board.

*Option Number Three:* Explore the possibility of transferring to another area within the police department or another city department where your hearing problem would not be a concern.

*Option Number Four:* Resign from the police department.

*Option Number Five:* If you do not take any of the above options, the department will be forced to seek your dismissal through a hearing with the Fire and Police Commission Board.

Defendant later offered to pay for part of the CROS–Plus hearing aid, which plaintiff did not try because the CROS–Plus was significantly more expensive than the CROS and because he had had a bad experience with the CROS. Defendant then offered to pay the full cost of the CROS–Plus, but plaintiff still refused to try it.

On March 31, 1993, plaintiff and his attorney met with Deputy Chief Colangelo and defendant's attorney to discuss the options offered to plaintiff in the March 26 letter. By the end of the meeting, plaintiff still refused to accept any of the listed options. Deputy Chief Colangelo then sent a memorandum to the police officers who had personal knowledge of circumstances in which

plaintiff's hearing had been a problem. The memorandum set forth, in part:

> You have stated to your supervisor, Commander Kaderabek that you have personal knowledge of an incident or incidents that involved a hearing problem with officer Karbusicky.
>
> Please respond to me in writing, as accurate as possible, the details, dates, etc., of the incident(s).

Colangelo received written responses from seven officers. On May 16, 1993, defendant filed a complaint and request for plaintiff's termination with the Board of Fire and Police Commissioners (the "Board"). On May 18, 1993, plaintiff was directed to see Dr. Arthur Curtis, an ear, nose and throat doctor. Dr. Curtis testified before the Board that plaintiff could not hear out of his left ear and that a CROS hearing aid might help him. Dr. Curtis concluded that plaintiff's hearing loss in his left ear would prevent him from localizing the direction of sound. Localization, Dr. Curtis explained, is the ability to determine the direction from which a sound is coming; it also enables a person to focus on certain sounds while ignoring others that he does not want to hear.

Dr. Curtis testified about various circumstances under which plaintiff would have difficulty hearing. For example, if plaintiff heard a window break or a gun shot, he would be unable to determine the direction from which the sound was coming. Dr. Curtis continued that plaintiff would have a problem hearing someone who spoke to him on his left side. Finally, Dr. Curtis opined that because plaintiff's hearing impairment caused plaintiff to have difficulties in communication and the localization of sounds, plaintiff presented a substantial risk of harm to both himself and other patrol officers.

Plaintiff's expert, Dr. Delicata, an ear, nose and throat specialist, testified before the Board that persons such as plaintiff, who are born with a one-sided neurological hearing loss, are able to cope with hearing loss as an adult much differently than those who have recently acquired such hearing loss. The former are able to localize sound perfectly well because they simply cock their head to one side and put their ear in the middle.

They then can tell if the sound is coming from the right, the left, or the back. Dr. Delicata, however, did not dispute that a person with a unilateral hearing loss would have difficulty localizing sounds; he admitted that, in instances in which a sound occurs only once, a person with unilateral hearing would not have the opportunity to reposition his head in order to determine the direction of the sound. Dr. Delicata concluded, and Dr. Curtis does not dispute, that plaintiff's binuaral hearing loss according to the American Medical Association's (AMA) formulas for determining if an individual has a hearing handicap, is thirteen (13) percent.

Defendant also presented the testimony of eight members of defendant's police department before the Board. The police officers testified about incidents relating to plaintiff's hearing loss that raised doubts in the witnesses' minds about plaintiff's ability to perform the duties of a police officer. The incidents ranged from plaintiff missing radio calls and transmissions that sought backup for other officers, to plaintiff asking witnesses and officers to repeat themselves.

Plaintiff rebutted the officers' testimony with his own testimony, the testimony of four officers with whom plaintiff had worked, and the testimony of a retired officer from the Lansing police department who had a hearing impairment similar to that of plaintiff. Plaintiff admitted to the commission that a police officer's ability to hear is important for the officer's own safety and for the safety of citizens and other police officers. Plaintiff also admitted that he has difficulty hearing in situations in which there is a lot of background noise, in which the sound emitted on his left side is not very loud, and in which there is some background noise and there is mumbling or talking in a low voice. Plaintiff stated that he has difficulty hearing other people speak when he is on the telephone because he has to use his normally functioning (right) ear to hear the telephone conversation.

On September 27, 1993, the Commission voted to discharge plaintiff on the basis that his hearing impairment prohibited him from performing the essential functions of a police

officer. Deputy Chief Colangelo and Director Baudek filed a motion to reconsider the Commission's decision to discharge plaintiff because defendant was attempting to formulate an accommodation for plaintiff. On November 16, 1993, Colangelo withdrew the charges before the Commission and plaintiff was assigned to a Community Service Officer ("CSO") position.

Defendant informed plaintiff that, although he was being transferred to a CSO position, he would maintain the same salary that he had as a police officer and would continue to be a member of the Union Lodge 16 of the Fraternal Order of Police. Plaintiff, in fact, has maintained the same salary and scheduled pay increases from the time that Commander Kaderabek first reported problems with his hearing loss until the present, and currently earns more money than other CSOs who perform the same duties. Nevertheless, neither party disputes that there are some differences in the job duties of a police officer and CSO; a CSO, unlike a police officer, may not arrest people and does not carry a gun. A CSO directs traffic and monitors police radio traffic.

On April 12, 1994, the Park Ridge Police Department issued General Order 32A. The purpose of the order was to establish the policy and procedures for the selection of sworn police officers for the City of Park Ridge. Section VI, subsection 8 of the order states that "medical problems likely to result in withdrawing a job offer include health and disability conditions that are beyond reasonable accommodation." It specifies such conditions as

> [c]andidate's ability to perform the essential functions of chasing and apprehending persons on foot, hand-to-hand combat with and control of resisting arrestees, driving, reading and writing, learning, articulate court testimony and police radio conversations, animal control, rendering first aid, *and seeing and hearing under adverse conditions.*

Defendant relies on General Order 32A as support for its decision to transfer plaintiff to the position of CSO. However, as plaintiff points out, General Order 32A was issued after defendant reassigned plaintiff to CSO.

Plaintiff has filed a one-count complaint, alleging that defendant's decision to transfer him from police officer to CSO was based on his hearing impairment and violated the ADA. Defendants have filed the instant motion for summary judgment on the following grounds: (1) plaintiff is not disabled as defined by the ADA; (2) even if plaintiff is disabled, he is not a qualified individual as defined by the ADA; (3) defendant's decision to transfer plaintiff to the position of CSO is a reasonable accommodation and, in any event, is not a materially adverse action under the ADA.

## Discussion

### I. *Standard*

Under Fed.R.Civ.P. 56(c), a court should grant a summary judgement motion if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of a genuine issue of material fact. *Id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). When reviewing a summary judgment motion, the court must read the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### II. *"Disability" under the ADA*

To set forth a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that (1) he is "disabled" as defined by the ADA; (2) he is qualified for the position in question, with or without reasonable accommodation; (3) he suffered an adverse employment action with regard to the position in question; and (4) a non-disabled person replaced him or was selected for the position that the disabled person had sought. *Kocsis v. Multi–Care Management,* 97 F.3d 876, 882 (6th Cir.1996).

Defendant's first argument in support of its motion for summary judgment is that plaintiff is not "disabled" as defined by the ADA. Section 12102(2) of the ADA defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.

As explained by the Equal Employment Commission ("EEOC") regulations, "major life activities" are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §§ 1613.702(c), 1630.2(j). "Substantially limits" means that an individual is either unable to perform, or significantly restricted as to the condition, manner or duration under which that individual can perform, a major life activity as compared to an average person in the general population. 29 C.F.R. § 1630.2(j)(1)(ii). Following these definitions, this circuit has emphasized that not every impairment which affects a person's major life activity qualifies as a disability under the ADA. *Roth v. Lutheran General Hospital,* 57 F.3d 1446, 1454 (7th Cir.1995). The impairment must be substantially limiting; it must be significant. *Id.*

In this case, defendant argues that plaintiff's hearing loss does not "substantially limit" his major life activities of working or hearing. Plaintiff agrees that his inability to perform a particular job would not amount to a "substantial limitation" of his ability to work. *See Homeyer v. Stanley Tulchin Associates, Inc.,* 91 F.3d 959, 961 (7th Cir.1996). Instead, plaintiff maintains that the major life activity in which he is substantially limited is hearing, not working.

Plaintiff also argues that he is disabled because defendant "regarded" him as having a disability. Defendant denies this allega-

tion, emphasizing that it hired plaintiff *knowing* that he had a hearing loss in his left ear. Moreover, defendant contends that its decision to reassign plaintiff to the position of CSO was not based on unsubstantiated stereotypes, but on the reports of eight police officers that plaintiff's problems with hearing posed a direct threat to his own safety as well as that of other officers and citizens.

Because, as explained below, the court finds that defendant is not a qualified individual within the meaning of the ADA, it need not decide, for purposes of the instant motion, whether plaintiff is "disabled" under the ADA. Even assuming that plaintiff is disabled, based on the court's analysis below, defendant is entitled to summary judgment.

### III. *"Qualified Individual" under the ADA*

■ A "qualified individual" under the ADA is one who, with or without reasonable accommodation, can perform the essential functions of the job that such individual holds or desires. 42 U.S.C. § 12111(9); *Gile v. United Airlines,* 95 F.3d 492, 496 (7th Cir. 1996). Defendant asserts that its reports from eight police officers and the testimony of its expert, Dr. Curtis, establish that plaintiff is unable to perform the essential functions of a police officer with or without accommodation and creates a direct threat to the safety of himself and others. Thus, defendant contends that it was justified and reasonable in accommodating plaintiff, first by supplying the CROS hearing aid (which did not work), then by offering to supply plaintiff with the CROS–Plus hearing aid (which plaintiff refused to try), and finally by transferring plaintiff to the position of CSO.

Transferring an employee with a disability to an another position may be a reasonable accommodation as a matter of law. *See Schmidt v. Methodist Hospital of Indiana,* 89 F.3d 342, 344 (7th Cir.1996); 42 U.S.C. § 12112(9)(A).[2] Although neither the statute nor the regulations specify the circumstances

---

**2.** 42 U.S.C. § 12111(9)(B) states that "reasonable accommodation" may include:

> (B) job restructuring, part-time or modified work schedules, *reassignment to a vacant position,* acquisition or modification of equipment or devices, appropriate adjustment or modifi-

cations of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities. (emphasis added).

under which an employer may reassign a disabled employee, EEOC's interpretive guidance, located in the appendix to the regulations, 29 C.F.R. app. § 1630.2(*o*), provides that:

> [R]eassignment should be considered only when accommodation within the individual's current position would pose undue hardship ... Employers should reassign the individual to an equivalent position, in terms of pay status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time ... An employer may reassign an individual to a lower graded position if there are no accommodations that would enable the employer to remain in the current position and there are no vacant equivalent positions for which the individual is qualified with or without reasonable accommodation.

This circuit has emphasized, however, that the ADA may require an employer to reassign a disabled employee in order to accommodate him only when "the employee can no longer perform the essential functions of [his] current position." *Gile*, 95 F.3d at 499. In the instant case, plaintiff has presented his own testimony, the testimony of several police officers, and the testimony of an expert that attempts to dispute defendant's evidence that he cannot perform the essential functions of a police officer. However, plaintiff admits that he has difficulty hearing under circumstances that will no doubt occur in the line of duty of a police officer: if there is a lot of background noise; if the sound coming from his left side is not very loud; and if there is background noise and the person speaking to him is mumbling or talking in a low voice. More importantly, plaintiff's own expert admitted that a person with unilateral hearing loss would not have the opportunity to compensate by repositioning his head to determine the direction of a sound made by a single isolated event, such as a gunshot.

These admissions by plaintiff and his expert are uncontested and establish plaintiff's lack of qualifications for the job of police officer. Regardless of the applicability to plaintiff of General Order 32A issued in 1994, which provides that police officers must be able to see and hear under adverse conditions, defendant would be remiss in its obligations to its police officers and the public if it were to allow plaintiff to continue serving as a police officer.[3] The court finds that plaintiff is not a qualified individual under the ADA, and defendant is entitled to summary judgment on this issue.

## IV. *Reasonable Accommodation*

Whether an action taken by the employer is a "reasonable accommodation" is a matter of law for the court to determine. *See, Vande Zande v. State of Wisconsin*, 44 F.3d 538, 545 (7th Cir.1995) (allowing a disabled worker to work at home at full pay with only a slight loss of sick leave is reasonable as a matter of law); *Guice–Mills v. Derwinski*, 967 F.2d 794, 798 (2d Cir.1992) (employer's offer of an alternative position that did not require a significant reduction in pay and benefits is a reasonable accommodation as a matter of law).

With respect to the instant case, the court emphasizes that defendant is not obligated to provide plaintiff with any accommodation he wishes. *See Gile*, 95 F.3d at 499. While reassignment is to be considered only after other accommodations within the employee's current position are attempted, *see* 29 C.F.R. app. § 1630.2(*o*), as mentioned above, defendant has made such attempts in the instant case by providing or offering to provide hearing aids that plaintiff regards as ineffective. Plaintiff has suggested no other method of accommodation that he could be offered in light of the fact, as found by the court in section III above, that plaintiff cannot perform the essential functions of a police officer. Although plaintiff, as a CSO, may not carry a gun or arrest persons as a police officer may, he maintains the same pay scale and benefits that he did as a police officer. Based on these uncontested facts, the court finds that defendant's decision to

---

3. Plaintiff contends that the essential functions of the job at issue are those that are listed in the job description for Park Ridge Police Officer which were in effect at the time plaintiff was hired as a Park Ridge Police Officer. However, even under that job description, a police officer "must be able to act without direct supervision in meeting emergencies."

reassign plaintiff to the position of CSO is a reasonable accommodation as a matter of law, and defendant is entitled to summary judgment on this issue as well.

### Conclusion

Based on the foregoing analysis, the court finds that, even assuming that plaintiff is disabled, no genuine issue of fact exists as to whether plaintiff is a qualified individual under the ADA and whether defendant has provided plaintiff with a reasonable accommodation. Accordingly, defendant's motion for summary judgment is granted.