Pamela M. PELLACK, Plaintiff,

v.

THOREK HOSPITAL AND MEDICAL CENTER, an Illinois not-for-profit corporation, Defendant.

No. 96 C 8399.

United States District Court, N.D. Illinois, Eastern Division.

July 10, 1998.

Eugene K. Hollander, The Law Offices of Eugene K. Hollander, Chicago, IL, for Plaintiff.

Linda Kay Horras, Tom H. Luetkemeyer, Hinshaw & Culbertson, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Pamela M. Pellack has brought a two count complaint against her former employer, Thorek Hospital and Medical Center ("the Hospital"), alleging violations of the Americans with Disability Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Count I), and common law retaliatory discharge (Count II). The Hospital has moved for summary judgement on both counts pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, the motion is granted.

### FACTS

Plaintiff was employed by defendant Hospital's predecessor, Main Occupational Health Services ("MOHS"), since 1990 as a medical assistant. Plaintiff's duties as a medical assistant included: bringing patients to the examination room; handling drug testing samples; recording patients' height, weight, and vital signs; administering breathing and hearing tests; drawing blood; cleaning patients' wounds; and assisting the clinic's doctor with basic medical procedures. Plaintiff also periodically typed insurance reports.

In January, 1994, the Hospital took over MOHS's operations and payroll. All MOHS employees became Hospital employees. Plaintiff filled out an employment application and became a Hospital employee on January 3, 1994. Her employment application contained the following language: "I . . . understand that if I am employed I will be on a probationary basis for 3 months from the date of employment." About a week later, plaintiff received a copy of the Hospital's employee handbook, which also sets forth the three month probationary policy for new employees. Plaintiff claims that she did not read the employee handbook.

In February of 1994, plaintiff first saw a doctor for a problem with her feet. She was diagnosed with a heel spur in her right foot and a Morton's neuroma and hammer toe in her left foot.[1] Her doctor informed her that she would need to undergo surgery and scheduled the surgery for the following week, on February 24, 1994. Prior to plaintiff's surgery, she informed one of her supervisors that she would be away from work for one work day and that she believed she would return to work after the weekend. On the date of the surgery, however, plaintiff's doctor informed her that she would be out of work for quite a while and that she would not be able to return to work the following Monday as expected. Immediately after her surgery, plaintiff informed Harry Salna, her supervisor, that the surgery was more extensive than she had anticipated and that she could not work for awhile. Salna told plaintiff that this would be no problem and they would get someone to cover for her.

During the second week of March 1994, two weeks after plaintiff's surgery, Salna visited plaintiff at her home. Plaintiff asked Salna if there was a job that she could do from her home. Salna told plaintiff that this should not be a problem, but that she would first have to resign from her position as a medical assistant and then apply for another position, which she would get if a position was open. Plaintiff did not do this.

In mid-March, 1994, Mr. Salna went to plaintiff's house with a "Thorek Hospital & Medical Center Family or Medical Leave Request" form and informed plaintiff that the Hospital had sent him with this form for her to sign. The form, partially completed by the Hospital to indicate that plaintiff would return to work on March 28, stated that plaintiff was taking leave "for my own serious health condition that make (sic) me unable to perform the essential functions of my job." Plaintiff refused to sign the form because she stated that she did not know how long she would need to be absent from work, and she was worried that she would be terminating herself by signing the form.

Following her surgery, plaintiff remained under her doctor's care, including two follow-up appointments on March 2 and March 9, 1994. In these two visits, plaintiff's doctor noted in his progress notes that plaintiff was doing well, not complaining of pain, and was ambulating without difficulty, even though she had been walking excessively. During the second of these two visits, plaintiff received a note, not from her treating doctor but from an associate doctor, which stated that she could not work until further notice. On April 6, 1994, plaintiff's doctor released her to return to work in a light duty capacity. Her doctor told her that she could do clerical work or other sitting work such as the drug testing aspect of her old job. At that point, it was not plaintiff's intention to return to her position as a medical assistant; rather, she wanted to be placed in a job where she could work in a sitting position.

Plaintiff and her doctor both contended that she could not return to her former position as a medical assistant unless she either had the assistance of others or the use of a cane or a walker. Plaintiff did not ask anyone at the Hospital to return to her former position with any form of accommodation such as the use of a cane or walker, or having an assistant.

On approximately April 7, 1994, plaintiff called Mr. Salna and informed him that her doctor had released her to return to work in a light-duty, sedentary position. At this time, plaintiff was informed that her position had been filled in her absence and that she should call Lucy Visintine, manager of the Ambulatory Care Clinics, for more information. Visintine subsequently informed plaintiff that her employment with the Hospital had been terminated and that her position had been filled because she had been on a 90 day probation as a new employee, and thus was not eligible for any form of leave. Plaintiff contends that she did not learn she was a probationary employee until this telephone conversation with Visintine on April 11, 1994. Plaintiff's termination notice, which was completed by Visintine, also stated that plaintiff

---

1. A Morton's neuroma is a benign tumor of a digital nerve of the foot. A hammertoe is a contracture or bending of the toe.

"had a surgical procedure on both feet which prevented her from ambulating in the performance of her job." The termination notice incorrectly stated that her termination was "voluntary" and that the "employee resigned."

Plaintiff subsequently learned that prior to her termination in mid-March, the Hospital had prepared a job order form, signed by a vice president of the Hospital, Frank Reichert, and by the Hospital's president, Frank Solare, seeking to fill plaintiff's vacant position. There is conflicting testimony as to what Frank Reichert knew about the status of plaintiff's medical condition at the time he made the decision to fill plaintiff's medical assistant position. Plaintiff argues that Reichert perceived her as disabled. The Hospital contends that Reichert knew that plaintiff was absent from work because of her surgical recovery, but decided it was necessary to fill her position.

On March 21, 1994, plaintiff filed a worker's compensation claim with the Illinois Industrial Commission, alleging that her foot problems were work-related. Prior to filing her claim, plaintiff called Salna and told him that her doctor believed that her condition might have been caused as a result of excessive standing and walking at work. Plaintiff asked Salna if she would be eligible for any worker's compensation benefits, and was told no. At this point, plaintiff retained a worker's compensation attorney. Plaintiff alleges that she was discharged in retaliation for filing her worker's compensation claim.

Next, plaintiff's attorney began discussions with the Hospital to see if they would reinstate plaintiff. After a number of months, during which plaintiff agrees she was willing to wait while the Hospital considered her request for reinstatement, the Hospital made an offer to plaintiff to return to work as a receptionist at the clinic. Because the receptionist who had held that position was resigning in July 1994, the position needed to be filled. Plaintiff accepted the position and began in late July, 1994. The Hospital re-hired plaintiff at her former salary, which was $3.00 an hour more than the normal receptionist salary, and the Hospital also counted plaintiff's work in January and February as "time-served." Both sides agree that this position accommodated plaintiff's need for a sedentary job.

Plaintiff left her receptionist job for a second foot surgery on October 22, 1994. While away from work following her second foot surgery, plaintiff was approached by an employee of the Teamsters Local 705 Health Center, who offered her a receptionist position, which plaintiff accepted. On November 18, 1994, plaintiff sent Salna a letter of resignation. Plaintiff alleges that she was constructively discharged from her receptionist job with the Hospital because co-workers were distant with her. Plaintiff further alleges that the clinic's physician, Dr. Radulovic, who was a personal friend of plaintiff, was distant toward her and once told her that she (Dr. Radulovic) would be fired if she associated with plaintiff. Dr. Radulovic denies stating this. Plaintiff believes this treatment occurred because she had filed the worker's compensation claim. Plaintiff never complained to anyone at the Hospital about her treatment or any comments made to her.

Plaintiff filed a charge of discrimination with the EEOC in July 1994, which she later amended in late September 1994. Plaintiff's EEOC charge did not allege that she had been constructively terminated from the Hospital in violation of the ADA or any other civil rights law. On September 24, 1994, the EEOC issued plaintiff its "Dismissal and Notice of Rights" form, which stated that the EEOC was unable to conclude there was a violation of the ADA. Plaintiff was given notice of her right to sue, and subsequently filed this suit.

## DISCUSSION

### I. Legal Standard

Under Fed.R.Civ.P. 56(c), a court should grant summary judgement if "there is no genuine issue of material fact and... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of a genuine issue of material fact. *Id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts

to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). When reviewing a summary judgement motion, the court must read the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II. *"Disability" under the ADA*

■ To set forth a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that: (1) she is "disabled" as defined by the ADA; (2) she is qualified for the position in question, with or without reasonable accommodation; (3) she suffered an adverse employment action with regard to the position in question; and (4) a non-disabled person replaced her or was selected for the position that the disabled person had sought. *Karbusicky v. City of Park Ridge,* 950 F.Supp. 878 (N.D.Ill.1997) (citing *Kocsis v. Multi–Care Management,* 97 F.3d 876, 882 (6th Cir.1996)).

Defendant's first argument in support of its motion for summary judgement is that plaintiff was not, at the time of her termination, "disabled" as defined by the ADA. Section 12102(2) of the ADA defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.

■ As explained by the Equal Employment Opportunity Commission ("EEOC") regulations, "major life activities" are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §§ 1613.702(c), 1630.2(j). "Substantially limits" means that an individual is either unable to perform, or significantly restricted as to the condition, manner or duration under which that individual can perform a major life activity as compared to an average person in the general population. 29 C.F.R. § 1630.2(j)(ii). When determining whether an impairment is substantially limiting, courts should consider the nature and severity of the impairment, its duration or expected duration, and its permanence or long term impact. *Hamm v. Runyon,* 51

F.3d 721, 725 (7th Cir.1995). Under the ADA, "intermittent, episodic impairments are not disabilities." *Id.* (quoting *Vande Zande v. Wisconsin Dept. of Admin.,* 44 F.3d 538, 544 (7th Cir.1995)).

A number of districts, including this one, have considered ADA claims by plaintiffs arguing their particular condition significantly limited their ability to walk or stand. In *Barker v. Andrew Corp.,* 1997 WL 803866, at *1–4 (N.D.Ill.Dec.31, 1997), the plaintiff claimed he was substantially limited in his ability to walk because he could not take long walks and was in a great deal of pain when he walked. *Id.* at *3. Like plaintiff in the instant case, the plaintiff in *Barker* had undergone surgery and was released to work, albeit with a number of restrictions. While the court found that the plaintiff's walking ability was impaired, it determined the plaintiff was not so limited that he could be deemed "disabled." In *Graver v. National Eng'g Co.,* 1995 WL 443944, at *9–11 (N.D.Ill. July, 25, 1995), the plaintiff had an arthritic condition in his ankles which caused him pain and stiffness, and caused him to walk with a limp. *Id.* at *2. The court found that the plaintiff's impairment did not significantly restrict his ability to walk, care for himself, or work, and thus ruled the plaintiff had not established a disability under the ADA. *Id.* at *10–11.

Defendant argues that at the time of her termination, plaintiff's foot problems did not "substantially limit" her major life activity of walking. Defendant contends that plaintiff's doctors' notes of early March 1994 indicate that plaintiff's surgery had been a success and that she ambulated well with no discomfort. Defendant stresses that the majority of plaintiff's medical testimony regarding the worsening of her condition refers to the time period leading up to and following her *second* surgery in the fall of 1994, not her condition at the time of her discharge in March 1994.

While the court agrees that the majority of plaintiff's medical testimony relates to her condition at the time surrounding her second surgery rather than around the time of her termination, it finds that enough genuine issues of material fact exist to establish a triable issue as to whether plaintiff was actu-

ally disabled. It simply is unclear from the record whether at the time of her discharge, plaintiff's ability to perform the major life function of walking was or was not substantially limited.

■ Plaintiff's response brief argues in the alternative that, even if this court does not find she had an actual disability under the ADA, the Hospital perceived her as being disabled, which satisfies one of the ADA's definitions of disability. The Hospital replies that because plaintiff failed to make a perceived disability charge in her EEOC charge or in her complaint, she is barred from bringing such a claim now. The Hospital argues that "as a predicate to a civil action, the ADA requires that a charge of discrimination be filed with the EEOC. This requirement has been interpreted as precluding the assertion of such claims in a federal complaint where they were not originally included in an EEOC charge." *Harper v. Godfrey Co.,* 45 F.3d 143, 147–48 (7th Cir.1995). Only those claims that are "like or reasonably related to" the discriminatory conduct identified by the plaintiff in the EEOC charge are permissible. *Id.* at 148.

While it is true that both the plaintiff's EEOC charge and her complaint fail to assert a perceived disability theory, such a theory is "like or reasonably related to" the discriminatory conduct identified by the plaintiff in her EEOC charge. Plaintiff's EEOC charge states that "in deciding to terminate [plaintiff], Defendant wrongfully discriminated against her because of her disability and in violation of the ADA." Under the definition of "disability" in 42 U.S.C. § 12102(2), a person has a disability if the person is actually disabled, has a record of such disability, or if the person is perceived as disabled. Therefore, in the instant case, a perceived disability theory of discrimination is "like or reasonably related" to the discrimination alleged by the plaintiff in her EEOC charge.

ADA regulations set forth three tests to help determine whether an individual has a perceived disability. They are: (1) the individual may have an impairment which is not substantially limiting but is treated by the employer or other covered entity as constituting a substantially limiting impairment; (2) the individual may have an impairment

which is substantially limiting only because of the attitudes of others toward the impairment; or (3) the individual may have no impairment at all but is regarded by the employer or other covered entity as having a substantially limiting impairment. *EEOC v. Joslyn Manufacturing Co.,* 1996 WL 400037, at *4 (N.D.Ill. July 15, 1996).

The court finds that enough genuine issues of material fact exist to establish a triable issue on plaintiff's perceived disability claim. Specifically, it is possible that plaintiff could succeed on the first prong of a perceived disability test that she "may have an impairment which is not substantially limiting but is treated by the employer or other covered entity as constituting a substantially limiting impairment." Plaintiff alleges that the leave form which plaintiff's supervisor Harry Salna presented to her is proof the Hospital perceived her as disabled, because it stated that plaintiff was taking leave "for my own serious health condition that make (sic) me unable to perform the essential functions of my job." Plaintiff contends that the language on this form shows direct evidence of the Hospital's perception of her disability. Even the Hospital concedes that its decisionmaker, Frank Reichert, knew that "plaintiff had foot problems and left for surgery." While Reichert might not have known the details of plaintiff's condition, it is undisputed that the decision to terminate plaintiff was made because she was unable to perform the duties of her job and because she was absent from work. The presence of numerous disputed material facts, especially concerning what Reichert, the Hospital's decisionmaker, knew about plaintiff's condition, makes plaintiff's perceived disability claim an appropriate issue for trial.

Although the court finds that genuine issues exist as to whether plaintiff was disabled or was perceived as disabled, as discussed below she is not a qualified individual who could perform the essential functions of her job with or without a reasonable accommodation. *See* 42 U.S.C. § 12111(8).

III. *"Qualified Individual with a Disability" Under the ADA*

■ A "qualified individual with a disability" under the ADA is one who, with or

without reasonable accommodation, can perform the essential functions of the job that such individual holds or desires. 42 U.S.C. § 12111(8); *Gile v. United Airlines,* 95 F.3d 492, 496 (7th Cir.1996). *See Schmidt v. Methodist Hosp. of Indiana, Inc.,* 89 F.3d 342 (7th Cir.1996). The employee bears the burden of proof to show that he or she is a qualified individual under the ADA. *DeLuca v. Winer Indus., Inc.,* 53 F.3d 793, 797 (7th Cir.1995); 42 U.S.C.A. § 12112(a). It is undisputed that plaintiff could not perform the essential functions of the medical assistant job without reasonable accommodation. Therefore, to determine whether plaintiff falls within the ADA definition of a "qualified individual," plaintiff must demonstrate that she could perform the essential functions of the medical assistant position with reasonable accommodation. If this condition is not satisfied, plaintiff is not a qualified individual as a matter of law.

Plaintiff has testified that she did not seek to return to her medical assistant job at all, even with an accommodation, because she could only return to "light duty" work. Plaintiff also admits that she never asked for this type of an accommodation, or asked for an accommodation such as the use of a cane or walker, or having an assistant. (Pl.Dep., pp. 96–97). Instead, plaintiff argues that it was the Hospital's duty to conceive of and offer her some type of reasonable accommodation.

■ Plaintiff is wrong. "In general…it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed." 29 C.F.R. § 1630.9, App. (1995); *Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 164 (5th Cir.1996). "Thus, it is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one. If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one." [2] *Id.* at 165.

■ Reassignment may be considered a reasonable accommodation where it is not possible to provide an accommodation that would enable an otherwise qualified individual to perform the functions of his or her own job. 29 C.F.R. § 1630.2(o)(2)(ii); *Wisniewski v. Ameritech,* 1996 WL 501737, at *8 (N.D.Ill. Sept.3, 1996). However, an employer has no duty "to find another job for an employee who is not qualified for the job he or she is doing." *Id.* at *8 (quoting *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)). The plaintiff bears the burden of showing that such reassignment was possible. *White v. York Int'l Corp.,* 45 F.3d 357, 362–363 (10th Cir.1995). At the least, this requires the plaintiff to: (1) identify another position; (2) show that he or she was qualified for that position, that is, that he or she could perform the essential functions of that position with or without reasonable accommodation; and (3) show that the position was vacant. *Wisniewski,* 1996 WL 501737, at *8 (citing *Miller v. Department of Corrections,* 916 F.Supp. 863, 870 (C.D.Ill.1996)).

Plaintiff has not made this showing because she has not offered any evidence that, prior to her termination, she identified and applied for any vacant position for which she was qualified. Plaintiff had been told by her supervisor that if she were interested in a new position, she would need to resign from her medical assistant position and apply for a new position, which she did not do. Moreover, the Hospital, by considering plaintiff's request for reinstatement on April 6, 1998, and ultimately reassigning plaintiff into the vacant receptionist position, reasonably accommodated her.[3] This accommodation by the Hospital was clearly reasonable and is ultimately fatal to plaintiff's ability to win under the ADA.

**IV. *Plaintiff's Constructive Discharge Claim***

■ There is a lack of authority as to whether a claim of constructive discharge

---

2. *See* 29 C.F.R. § 1630.9 App. (1995): "Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation."

3. Plaintiff complains that the Hospital waited an inordinately long period to rehire her as a receptionist. Yet, the record is clear that plaintiff informed the Hospital that she was is no hurry to resume employment.

stemming from a hostile working environment is cognizable under the ADA. *Miranda v. Wisconsin Power & Light Company*, 91 F.3d 1011, 1016–17 (7th Cir.1996). In *Miranda*, instead of deciding whether there was a cause of action for constructive discharge under the ADA, the court reasoned that "in analyzing claims under the ADA, it is appropriate to borrow from our approach to the respective analog under Title VII." *Id.* at 1017. The court then reiterated the standard for a Title VII constructive discharge claim: "A claim of discriminatory constructive discharge requires a plaintiff to demonstrate first that he was constructively discharged— i.e, that the employer 'made the working conditions so intolerable as to force a reasonable employee to leave.' Once the plaintiff has made this showing, he must establish that he was constructively discharged because of his membership in a protected class." *Id.* (citing *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 517 (7th Cir.1996)). The court then held, "In the present appeal, we need not decide the question of whether a claim of constructive discharge is cognizable under the ADA, because, even assuming that it is, [the plaintiff's] claim falls far short of what such a successful claim would require." *Miranda*, 91 F.3d at 1017.

Like the plaintiff in *Miranda*, plaintiff in the instant case falls far short of what a successful constructive discharge claim would be under a Title VII analysis. Plaintiff has not offered sufficient evidence to create a triable issue of fact with respect to her constructive discharge claim. She has failed to identify any action by the Hospital that might reasonably be viewed as creating an intolerable work environment. Plaintiff contends that Harry Salna, her supervisor, was "short" with her, trailed her around and made repeated "unwarranted inquiries as to her medical status," and that her friend, Dr. Radulovic, was distant to her. These allegations fall far short of working conditions so intolerable that a reasonable person would have been compelled to resign. "One's work environment may be unpleasant and conflicts, friction and disharmony may be present, but without more, these unpleasantries do not constitute a constructive discharge." *Rabinovitz v. Pena*, 905 F.Supp. 522, 534 (N.D.Ill.1995).

## V. *Plaintiff's Illinois State Law Retaliatory Discharge Claim*

Plaintiff's state law claim that defendant discharged her as retaliation for filing a worker's compensation claim is dismissed without prejudice under 28 U.S.C. § 1367. A district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. Because the court has granted judgment as a matter of law on all the ADA claims over which the court has original jurisdiction, the court declines to exercise jurisdiction over the Illinois state law claim of retaliatory discharge.

### CONCLUSION

For the reasons set forth above, the Hospital's motion for summary judgment is granted on the ADA and constructive discharge counts. The plaintiff's state law retaliatory discharge claim is dismissed without prejudice.