**Sarah M. ADAMS, Plaintiff,**

v.

**WAUPACA COUNTY; Waupaca County Highway Department; Loren R. Craker, individually and in his capacity as a Highway Commissioner; Daniel M. Nolan, individually and in his capacity as Office Manager of the Waupaca County Highway Department; Donald E. Fabricius, individually and in his capacity as a County Supervisor and Chairman of its Highway Committee; Henry J. Steenbock, individually and in his capacity as a County Supervisor and as a member of its Highway Committee; James Flink, individually and in his capacity as a County Supervisor and as a member of the Highway Committee; and G. Robert Flease, individually and in his capacity as a County Supervisor and as a member of its Highway Committee, Defendants.**

Civil Action No. 96–C–141.

United States District Court,
E.D. Wisconsin.

May 11, 1997.

---

A. Steven Porter, Madison, WI, for Plaintiff.

John E. Thiel, Rebecca L. Kent, Godfrey & Kahn, Appleton, WI, for Defendants.

## DECISION AND ORDER GRANTING SUMMARY JUDGMENT

REYNOLDS, District Judge.

Plaintiff Sarah M. Adams ("Adams") formerly worked for defendant Waupaca County's ("the County") Highway Department. Adams, an Irish female who was born in 1936, alleges that defendants unlawfully discriminated against her on the basis of sex, age, and national origin, in violation of Title VII of the Civil Rights Act, the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 1981, and the Equal Protection Clause. She also brings a claim under Article I of the Wisconsin Constitution. Before the court is defendants' motion for summary judgment, which the court grants.

## I. BACKGROUND [1]

The Highway Department maintains and constructs county trunk highways, and provides maintenance and other highway-related

---

**1.** The background facts are taken from the parties' proposed findings of fact ("P.F.O.F."). When there is no objection to proposed findings of fact, the court accepts them as true. Local Rule 6.05(d) (E.D.Wis.).

As to disputed facts, the court reviewed the portion of the record cited in support. Hearsay will not be considered in determining summary judgment. *McKenzie v. Illinois Dep't of Transp.,* 92 F.3d 473, 484 (7th Cir.1996). Any factual statements which are disputed and do not have support in the record were disregarded by the court for purposes of this decision. If a disputed fact proposed by plaintiff is supported by the portion of the record cited, the court, for purposes of deciding this summary judgment motion, accepts plaintiff's version as true.

services to other municipalities and the State of Wisconsin.

Defendant Loren R. Craker ("Craker") is Commissioner of the Highway Department. In that capacity, he manages and supervises Highway Department employees.

Defendant Daniel Nolan ("Nolan") is the accountant/office manager for the Highway Department. He reports directly to Craker.

Defendant Waupaca County Highway Committee ("Highway Committee"), which had five members in 1994, is responsible for deciding policy and approving or disapproving bills and projects. Defendant Donald Fabricius is the Chairman of the Highway Committee; defendants G. Robert Flease, James Flink, and Henry J. Steenbock are also members. Craker reports to the Highway Committee on a regular basis.

In late 1993, the County created the position of confidential secretary in the Highway Department; the secretary was to report to Craker, who created the job description. Craker reviewed the applications and assisted in selecting interviewees and the interview process. Adams was hired to fill the position and began working in early 1994.

On August 8, 1994, Craker terminated Adams, which termination gives rise to this action.

## II. *DISCUSSION*

### A. *Summary Judgment Standard*

The court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of asserting the absence of any dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). To withstand summary judgment, however, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Even if some

facts are in dispute, entry of summary judgment is in order if the movant either establishes uncontroverted facts entitling it to summary judgment or demonstrates that the non-moving party has failed to make a sufficient showing on an essential element of its case with respect to which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. The court must draw all reasonable inferences from the record in favor of the nonmoving party. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv.*, 40 F.3d 146, 150 (7th Cir.1994).

### B. *Discrimination Claims*

The amended complaint alleges that all defendants are liable for Adams' termination under all of her stated causes of action. Adams concedes that the County is the only proper defendant on her Title VII and ADEA claims. (Mar. 3, 1997 Br. at 1.)

For all of her claims except the claim based on due process,[2] Adams must establish, through either direct or indirect proof, that the County intentionally discriminated against her. *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir.1993). Here, the indirect, burden-shifting approach is used, whereby Adams must first establish a prima facie case that (1) she was a member of a protected class; (2) she performed the job to her employer's legitimate expectations; (3) she was terminated; and (4) other similarly-situated members not in her protected class were given more favorable treatment. *Cheek v. Peabody Coal Co.*, 97 F.3d 200 (7th Cir.1996).

If a prima facie case has been made, the County, to rebut the prima facie case, may present a legitimate, nondiscriminatory reason for the decision to terminate Adams. *Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1016 (7th Cir.1996). If the County rebuts the prima facie case, the burden of production shifts back to Adams to show that the reasons given for her termination are pretextual; the burden of persuasion remains with Adams to show that the County intentionally discriminated against her. *Id.*

---

2. See footnote No. 7, below.

■ Here, defendants challenge the second element of Adams' prima facie case, i.e., they contend that she was not adequately performing her job responsibilities. Because the factual support for this contention is the same as that which supports defendants' rebuttal of Adams' prima facie case, the court will go straight to consideration of whether Adams can show that defendants' reasons for her termination are pretextual. In order to do so, Adams may show that the reasons are unworthy of credence or that a discriminatory reason more likely than not motivated the County. *Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir.1996.) Adams must specifically refute facts supporting the County's reasons; general averments of adequate performance are insufficient. *Mills v. First Fed. Sav. & Loan Ass'n*, 83 F.3d 833, 845 (7th Cir.1996); *Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 378 (7th Cir.1995).

## 1. *Defendants' Stated Reasons for Adams' Termination*

The reasons given by defendants as factors which contributed to Adams' termination, and her response, are discussed below. These reasons factor into a determination of whether Adams was discriminated against on the basis of her sex, age, or national origin. Following is a discussion of facts specific to each category of discrimination which Adams claims supports an inference of discrimination.

### Reason No. 1:

*Adams did not acquire a sufficient understanding of highway department operations or road construction techniques.* Defendants explain that it would have facilitated job performance if Adams had had a greater understanding of such matters. Moreover, Craker had taken her to road work sites on occasion to increase her understanding. Adams attests that she knew as much as others, and that Craker never asked her about such topics so he would not know the extent of her knowledge. She also argues that Craker does not recall a specific problem arising because of this alleged deficiency, and that there was no prerequisite for the job to have such experience.

### Reason No. 2:

*Adams' taking and preparing Highway Committee minutes was inaccurate.* Defendants explain that in mid-March, Craker and the County personnel director met with Adams to discuss certain aspects of her performance, including her minute-taking of Highway Committee meetings. Because Craker believed that sometimes the minutes were an inaccurate reflection of the Highway Committee's intent, he asked Adams to be more careful. Adams responds that Craker only testified that there was some discussion at one time about her preparation of minutes, but that he did not recall a time frame, and that before Adams, Nolan took minutes which Craker had concerns with.

### Reason No. 3:

*Adams' preparation of document drafts were often very rough and did not contain complete sentences or proper sentence structure.* In addition, she was not always precise with her work, e.g., papers were mispunched, copies were mis-aligned, and document pages were mis-assembled. Adams asserts that Craker never counseled her about typing or formatting documents. (Mar. 3, 1997 Br. at 10.)

### Reason No. 4:

*Adams did not file correspondence in chronological order as instructed, which at times would increase Craker's work time to locate documents during off hours.* Adams cites to testimony by a co-worker that prior to Adams, filing was all over the office, which Adams corrected, and that there were a couple of times that Craker blamed Adams for his misplacement of documents.

### Reason No. 5:

*Adams was difficult to understand on the telephone.* Defendant's explain that Adams spent at least twenty percent of her time performing telephone and receptionist duties, that Craker considered these duties to be an essential function of the confidential secretary position, and Craker was concerned about Adams' ability to communicate clearly. Adams attests that she had been highly rated

on telephone communication skills at her previous employment; no one outside the Department has told her that she was difficult to understand; co-workers had no problems understanding her. She further argues that Craker told her that Committee members had difficulty with her accent, but members testified that any comments were made in passing, not as complaints.

**Reason No. 6:**

*On one occasion, Adams sent Craker's personal notes instead of the agenda to the Highway Committee, resulting in confusion to the Highway Committee members and embarrassment to Craker.* Adams does not respond to this reason.

**Reason No. 7:**

*Adams failed to timely forward notice of a Highway Committee meeting to the County Clerk, which meant that the meeting was not properly noticed and had to be cancelled.* The Highway Committee Chairman told Craker that he was not pleased with the situation. Craker met with Adams about the fact that the meeting had not been properly noticed, and told both Adams and Nolan that they needed to make sure that the meetings were properly posted in the future. Adams testified that it was Nolan's, and not her, responsibility for noticing meetings at the time and that Craker did not specifically blame anyone at the time.

### 2. Factual Allegations Specific to Sex Discrimination Claim

Adams alleges that Nolan made jokes, slurs, and comments of a sexual nature which were tolerated in the Highway Department. Adams further states that Craker made comments to Adams regarding a female staff member which implied to Adams that he felt it was acceptable for men but not women to be living together, which Adams perceived to be sexist.

Adams further testified that Craker told her to scrub the floor, stating "[g]et down here and clean these grease spots up," and also stated "[t]hat's woman's work." (Adams Dep. at 140, 148.) Craker testifies that Adams misunderstood his instruction, that he did not tell her to personally clean the carpet, but that she should see that someone did; Craker also denies that he made the statement about "woman's work." The court will, however, assume that Adams' assertions are true.

Adams finally contends that she was similarly situated to Nolan, who had performance problems but was not fired.

### 3. Factual Allegations Specific to Age Discrimination Claim

The amended complaint incorporates Adams' Title VII allegations and states that the alleged actions of defendants violated the ADEA. Adams expands on her theory of age discrimination by explaining that shortly after she began work for the County, Nolan asked for her birth date and recorded it along with other information about her on an index card kept in a file on the Highway Commission office counter. After learning her age, Nolan commented that she was the oldest employee in the office, and that she was the same age or older than recent retirees. She also perceived that Craker's attitude towards her changed when he learned her age. Finally, a co-worker testified that she heard Craker make disparaging remarks about older employees.

### 4. Factual Allegations Specific to National Origin Discrimination Claim

Adams claims that defendants' assertion that she was difficult to understand comes from her accent, which suggests that she was discriminated against because she is Irish. She also alleges that a Highway Department shop foreman made a comment to the effect that she should leave the country if she can't speak the language, and Nolan often made ethnic jokes and slurs about Highway Department employees.

### 5. Conclusion Regarding Adams' Discrimination Claims

Adams must show that she was discriminated against because of her sex, age, or national origin instead of her alleged performance deficiencies. This court must keep in mind that it is not to interfere with an

employer's legitimate business decisions. *Rabinovitz,* 89 F.3d at 487. Here, Adams had a unique position as a confidential secretary to the Highway Commissioner. Craker's involvement in hiring creates an inference of nondiscrimination. *E.E.O.C. v. Our Lady of Resurrection Med. Ctr.,* 77 F.3d 145, 152 (7th Cir.1996.)

■ Adams generally argues that she was qualified to do the job because she had always received excellent performance evaluations from her previous nine-year employment as a secretary, that her co-workers considered her to be competent, and that Craker never indicated that her performance was unsatisfactory. Adams' performance with another employer is irrelevant. The fact that co-workers indicate that her performance was satisfactory or that she was not entirely responsible for some of the alleged problems, does not create a material issue of fact with respect to whether Craker considered the alleged performance deficiencies in deciding to terminate her. *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1125 (7th Cir.1994.) The court also notes that Adams' testimony reveals that in an ERD submission, she indicated that she was constantly criticized by Craker, but after hearing that he criticized others, she did not take it personally.

Adams does not refute defendants' contention that her document and Highway Commission minute preparation [3] was deficient, or that she mis-filed documents and mistakenly forwarded Craker's notes to the Highway Commission.

■ Regarding her sex discrimination claim, Craker's one general comment regarding the living situation of a female employee, and his comment that cleaning the carpet is "woman's work," is not enough. It is undisputed that both Craker and Nolan on occasion cleaned the carpet. There also is no connection between the alleged statements and the decision to fire Adams, *Geier v. Medtronic, Inc.,* 99 F.3d 238, 242 (7th Cir. 1996), and Adams does not pursue a hostile work environment claim.[4]

■ As to Adams' age discrimination claim, Craker testified that he did not know Adams' age; Adams' deposition testimony states that once Craker became aware of her age (there is no explanation as to how or when), she "seemed to have a problem." The co-worker's testimony (which is characterized as Craker making disparaging remarks about older workers) is not definitive enough to create an inference that Cracker made the decision to terminate Adams because of her age.[5]

Adams does not respond to defendants' point that it may be legitimate to base a business decision on accent if an employee's accent materially interferes with job performance. *Fragante v. City and County of Honolulu,* 888 F.2d 591 (9th Cir.1989).

There is no evidence in the cited material that Craker condoned or even knew Nolan's comments which were related to sex, age, or national origin. There is no suggestion that

---

3. The fact that Craker was displeased with how Nolan (who has a different job description than Adams) took minutes is not telling, nor does Adams supply an explanation regarding the basis (substance or source) of this assertion.

4. The court notes that in a November 17, 1994 letter to the Equal Rights Division, Adams stated, "I do not feel sex was a factor in my termination." (Adams Dep. Exh. 19; Defs.' P.F.O.F.App., Tab 19.)

5. The testimony was as follows:
Q Did you ever hear Loren Craker make comments in the work place about older workers?
A Yes. I think I did, but I don't remember what he said.

Q Do you remember when you would have heard him make comments to that effect? .
A It was—it wasn't that long after he got there.
Q Do you remember what he said?
A Not exactly, just something about newer or fresher or something like that.
Q Do you remember who he was referring to when he made that comment?
A I don't know if he was referring specifically to one person.
Q Was he referring to anyone that worked at Waupaca County?
A He was referring just to the department basically.
Q Okay. And was he saying newer or fresher in reference to employees of the department?
A I'm not sure.
(Lawrence Dep. at 63.)

Nolan's comments in any way impacted on Craker's decision to terminate Adams.

■ With respect to Adams' contention that she was similarly situated to Nolan, a male who had performance problems yet was not fired, the cited record begins with the testimony that her position was unique—the similarity apparently comes from the fact that Nolan and Adams both reported directly to Craker and Craker told them what to do. Nolan, however, had a different job title and responsibilities (e.g., he headed the accounting department), and also is a non-probationary employee [6]; he was not similarly situated for purposes of comparing Adams and Nolan in regards to performance of job duties.

After a review of the factual record as presented by the parties, the court concludes that Adams has produced insufficient evidence to call into question defendants' stated reasons for her termination, or create an inference that there was unlawful consideration of a characteristic in the decision to terminate her employment with the County.[7]

### C. Due Process Claim

■ Adams alleges that she had a property interest in her employment with the County and that because she was not given a pre— or post—termination hearing, she was deprived of this interest without due process of law. In order to prevail on her due process claim, Adams must establish that (1) she had a constitutionally protected property interest in her employment; (2) she was deprived of her interest; and (3) the deprivation was made without due process of law.

With respect to Adams' due process claims, defendants first argue that she had no protected property interest because she was a probationary employee who could be fired without cause. Following the interview process, the County Personnel Department

sent a letter dated February 2 to Adams. The letter offer stated in part:

> With this letter, we are pleased to extend to you an offer of an appointment as Confidential Secretary in the highway Department, effective February 16, 1994.
>
> .     .     .     .     .
>
> There is a six month probationary period; this probationary period may be extended for up to an additional six months.
>
> .     .     .     .     .
>
> To accept this offer please sign the enclosed copy of this letter of offer and return it to our office as soon as possible.

(Adams Dep. Ex. 5; Defs.' P.F.O.F.App., Tab 5.) Adams signed the offer letter on February 10.

Adams had a property interest in her employment if she had a "legitimate claim of entitlement to it"; a mere unilateral expectation is not enough. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In determining whether Adams had a property interest in her employment, this court references state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). The general rule in Wisconsin is that employees are terminable at will, *Vorwald v. School Dist. of River Falls,* 167 Wis.2d 549, 557, 482 N.W.2d 93, 96 (1992), but Adams contends that County policy afforded her a property interest in her position.

The County Personnel Policies and Procedures Manual defines "probationary period" as "[a] trial period of employment during which time an employee is required to demonstrate capability for permanent employment, and during which he/she may be terminated without cause." (Craker Aff., Ex. C at Definitions; Defs.' P.F.O.F.App., Tab 17.) The Manual further provides that "[a] proba-

---

**6.** See discussion of Adams' due process claim, below.

**7.** Assuming Adams can allege a claim under 42 U.S.C. § 1981 (the complaint is unclear on what grounds she rests this claim, and a claim of national origin discrimination, as distinct from discrimination based on race, does not state a cause of action under § 1981), the methods of proof and elements are essentially the same as for Title VII. *Johnson v. City of Fort Wayne,* 91

F.3d 922, 940 (7th Cir.1996). Adams's § 1981 claim is therefore dismissed. Likewise for Adams' claim that her equal protection rights were violated. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Adams does not challenge defendants' position that her claim under the Wisconsin Constitution is given the same analysis; this claim is therefore also dismissed.

tionary employee may be discharged at the discretion of the employer without regard to cause and without recourse to the complaint procedure." (*Id.* at Recruitment and Selection Policies, § G(a).) Once a County employee has completed a probationary period to become a tenured or permanent employee, they may only be terminated for cause.

Adams was fired on August 8. Taking six months from either the effective date of her appointment contained in the County's letter (February 16) or the date Adams formally accepted the County's offer (February 10), Adams was a probationary employee with no arguable property interest in her position. Adams, however, contends that her employment commenced no later than February 1 because Craker had orally offered her the job in late January which she accepted, and at his request, she began working in the evening hours in late January. While there is a dispute regarding when Adams began work and the type or work she was performing at this early date, these facts are not material to the court's decision.

Adams makes no suggestion that Craker had authority to alter the terms of her employment with the County regarding her appointment date. As such, Craker's purported statements could not create a "mutually explicit understanding" that Adams had an entitlement to a property interest. *See Fittshur v. Village of Menomonee Falls,* 31 F.3d 1401, 1408 (7th Cir.1994) (interpreting property interests under Wisconsin law). Nor does Adams cite to any law which would allow the alleged prior oral statements by Craker to set Adams' appointment at some date earlier than February 16. As such, Adams was still a probationary employee with no property interest in her position at the time of her termination.

### III. *CONCLUSION*

Defendants Waupaca County, Waupaca County Highway Department, Loren R. Craker, Daniel M. Nolan, Donald E. Fabricius, Henry J. Steenbock, James Flink, and G. Robert Flease's motion for summary judg-

ment is **GRANTED** and this action is **DISMISSED**.