**Gloria Jean SMITH, Plaintiff–Appellant,**

v.

**KENTUCKY STATE UNIVERSITY, Defendant–Appellee.**

No. 02–5652.

United States Court of Appeals, Sixth Circuit.

April 7, 2004.

Debra Ann Doss, Lexington, KY, for Plaintiff–Appellant.

J. Guthrie True, Johnson, Judy, True & Guarnieri, Frankfort, KY, for Defendant–Appellee.

Before MERRITT, DAUGHTREY and GIBBONS, Circuit Judges.

AMENDED OPINION

MERRITT, Circuit Judge.

In this sex discrimination case under Title VII based on alleged salary discrimination against a female faculty member, the District Court granted summary judgment for the defendant University on the plaintiff's disparate treatment claim and her retaliation claim. In doing so the court found no evidence of intentional discrimination or pretext on either count. On appeal, the plaintiff argues that there is

direct as well as circumstantial evidence of discrimination and retaliation.[1] Taking the evidence in the light most favorable to plaintiff, as we must, our de novo review of the record discloses sufficient direct evidence of discrimination and retaliation to create triable issues of fact.

■ The plaintiff, Dr. Jean Smith, a tenured associate professor, has taught basic business courses for 15 years and was for many years the only woman in the School of Business, Division of Computer and Technical Services. She was originally hired in 1988 at the community college level at a low rate of pay to teach office administration. Augmented by cost-of-living increases since that time, Smith's current salary is 31% less than male faculty of her rank and 13% less than male faculty below her. University Budget Officer Carson Smith testified about a study he made comparing faculty salaries based on gender: "Female faculty were generally not paid at the same rate as male faculty, and principally the entry level is what determines. . . . In other words. John Doe gets three percent and Mary Doe gets two percent. As I recall, it principally had to do with the salary that—the initial salary. But the females were paid at a lesser rate, as I recall, and there wasn't much else you could attribute it to." His testimony appears to mean that the difference in pay between plaintiff and male faculty members is primarily the result of a lower "initial salary" for women that has remained uncorrected over the years. Dr. Alan Moore, who was the President of the Faculty Senate for nine terms, testified that he had raised the sex discrimination issue after reviewing the salary of a female full professor in his department and then "all of the faculty salaries" and concluded, "I, just on a subjective level, do not feel that my women colleagues are necessarily being paid as much, as I think they should be." The Dean of the School of Business wrote a letter, dated May 8, 1997, to the University Vice President for Academic Affairs asking for a pay raise for plaintiff. In the letter he stated that salary levels at Kentucky State University are based on many factors, including "gender." Although the District Court is correct that there is evidence from the defendant that plaintiff's low pay in comparison to men is attributable to factors other than gender (*e.g.*, that the business classes she taught were in subjects of less importance than those taught by the male teachers), there is significant evidence from which the finder of fact could find that intentional gender discrimination was a substantial factor in the pay equation.

■ The evidence of retaliation against plaintiff after she filed her EEOC claim and brought suit in federal court on June 5, 2000, is similar. Dr. Okonkwo became the Dean of the Business School in 2000. The plaintiff's evidence supports the claim that his attitude and conduct toward her changed dramatically and became openly hostile after she filed her EEOC complaint. The plaintiff testified to numerous incidents such as his telling her that her courses would be given to part-time faculty and that she was "going to be out of here." Professor Desborde, a marketing teacher at Kentucky State University, corroborat-

---

1. Plaintiff argues at page 18 of her brief that in "direct evidence" case "the *McDonnell Douglas* formula" is not "applicable." *See McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (creating a formula for establishing a "prima facie" case of discrimination). In her brief and argu-
ment, plaintiff treats this as a direct evidence case and does not follow the *McDonnell Douglas* "formula." Petitioner's claim is based on "the failure of the District Court to consider direct evidence ... of both disparate treatment and retaliation."

ed the plaintiff's testimony that she was given unusually harsh treatment. He was told by Dr. Okonkwo, "[D]on't listen to that woman." When asked to explain, Professor Desborde testified:

Q. I take it since you do recall those words specifically, did that stand out in your mind?

A. Yes.

Q. And just for the record so I understand your position, why did Dr. Okonkwo, your dean, making that kind of comment about a fellow faculty member surprise you or stand out in your mind?

A. I was surprised when he said that, actually shocked, because I always thought of Dr. Jean Smith as being a dedicated and well-respected member of the School of Business faculty.

Q. Have you ever heard Dr. Okonkwo make that kind of negative comment to you about any other School of Business faculty?

A. Not that I recall, you know.

Professor Kimberly Sipes, a visiting professor, also testified that the Dean was hostile toward plaintiff at many faculty meetings and did not act in this way toward other faculty.

The plaintiff's own testimony and the testimony of Professors Sipes and Desborde raise a triable issue of fact regarding retaliation. The District Court was in error in finding no evidence that plaintiff's lawsuit "caused" Dean Okonkwo to treat her in a much more hostile manner than other faculty. His conduct included a threat to discharge her – to make sure that she was "out of here." It is not for us or the District Court to weigh the conflicting evidence on summary judgment and reach a verdict. Where there is an evidentiary basis for a difference of opinion, the case must be tried.

The University raises in its brief the procedural arguments that the plaintiff's unequal pay claim is time-barred and that her retaliation claim should be dismissed for failure to exhaust administrative remedies. On both points, the district court ruled in favor of the plaintiff, and the University did not file a cross-appeal. The plaintiff urges the Court not to consider these arguments in the absence of a cross-appeal.

■ The general rule is that the appellee "may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below." *United States v. American Ry. Express Co.*, 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087 (1924); *see Francis v. Clark Equip. Co.*, 993 F.2d 545, 552 (6th Cir.1993) (stating that "the filing of a notice of cross-appeal is jurisdictional where an appellee wishes to attack part of a final judgment in order to enlarge his rights or to reduce those of his adversary"). Accordingly, in the absence of a cross-appeal, the Court need not consider any argument urged by the prevailing party whose acceptance by the Court would result in a modification of the judgment as entered below. *See Olympic Fastening Sys., Inc. v. Textron, Inc.*, 504 F.2d 609, 617 (6th Cir.1974) ("When an appellee seeks to have findings of a trial court revised, a cross appeal is required if such revision 'carries with it as an incident a revision of the judgment.' "). On the other hand, the Court may consider arguments to support the judgment as entered without requiring a cross-appeal. *See American Ry. Express Co.*, 265 U.S. at 435–36 ("[T]he appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record . . . .").

**26**

Although the rule seems clear on the surface, the law surrounding what exactly constitutes a modification of the judgment requiring a cross-appeal is confusing. *See generally* 15A Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3904, at 206–09 (1992) (discussing the uncertain modern value of the cross-appeal requirement and general lack of reasoning for its application recent cases).

We find that we have previously held that no cross-appeal was required in a case where the defendant-appellee argued that the plaintiff's Title VII claim was time-barred, an argument that had been rejected by the district court. *See Ball v. Abbott Advertising*, 864 F.2d 419, 421 (6th Cir.1988). In contrast, a judgment based on exhaustion grounds, as opposed to judgment on the merits, would seem to fall clearly into the category of a requiring a cross-appeal to modify the judgment. In general, a final judgment on the merits functions as *res judicata*, whereas a judgment declining to reach the merits on exhaustion grounds does not normally conclude the case. But in light of the confusion about what issues must be cross-appealed, we will reach the merits of both the University's procedural arguments despite the absence of a cross-appeal.

■ Citing the "continuing violation doctrine," the district court ruled that the plaintiff's unequal pay claim was not time-barred because she received unequal pay within the 180–day limitations period. Under that doctrine, "where there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period." *Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir.1992). As we have recognized, "the employer commits an illegal act *each time*

the employer dispenses the unequal pay." *Id.* at 678 (internal quotation omitted) (emphasis in original). Because the plaintiff in this case offered evidence that she was receiving unequal pay based on her gender up to the time she filed the EEOC charge, her claim is not time-barred, at least with respect to those discrete instances of unequal pay falling within the limitations period. *See National Railroad Passenger Corp. [AMTRAK] v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (overruling the continuing violation doctrine with respect to the serial violations type of continuing violation exception, as explained in *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir.2003)).

■ With respect to the retaliation claim, the University argues that the plaintiff was required to file a separate charge of retaliation with the EEOC after the alleged retaliative conduct. As the district court recognized, it is well-settled that a federal court has jurisdiction to hear Title VII claims that can be reasonably expected to grow out of an EEOC charge. *See Strouss v. Michigan Dept. of Corr.*, 250 F.3d 336, 342 (6th Cir.2001). As a general matter, "retaliation claims based on conduct that occurs after the filing of the EEOC charge can be reasonably expected to grow out of the charge." *Id.; see also Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 833 (6th Cir.1999) ("[R]etaliation naturally grows out of any underlying substantive discrimination charge, making a retaliation claim foreseeable to defendants."). The district court properly concluded that the plaintiff exhausted her claim of retaliation insofar as it relates to events occurring after she filed her EEOC charge as being reasonably related to, and having grown from, the underlying discrimination charge presented to and investigated by the EEOC.

Accordingly, the judgment below is reversed, and the case is remanded for trial

on the issues of disparate treatment and retaliation.