COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| | § | |
| EL PASO COUNTY, TEXAS, | | No. 08-15-00086-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 34th District Court |
| | § | |
| MARY LOU VASQUEZ, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 2014DCV1842) |
| | § | |

## **O P I N I O N**

This is an accelerated interlocutory appeal from a trial court order denying El Paso County's plea to the jurisdiction. We reverse and render in part and remand the remainder.

### **FACTUAL SUMMARY**

El Paso County hired Mary Lou Vasquez on August 20, 2001. For the next eleven years, Vasquez worked several clerical and secretarial positions, but primarily maintained her position as a Collection Specialist with the County's Bond Forfeiture Unit.

On September 3, 2012, Vasquez suffered a heart attack at home and was immediately taken to the emergency room at Del Sol Medical Center. She was 54 years old at the time. About a week later, Vasquez had quintuple bypass heart surgery. Because of her heart attack and subsequent surgery, Vasquez took an employer-approved leave of absence from work. While on leave, her supervisor, Ralph Girvin, directed her to communicate with an individual named Lulu, a secretary at the County Attorney's office, about the status of her medical leave of absence.

Vasquez regularly reported to Lulu with updates and the progress of her treatment and status. While still at Del Sol recovering from surgery, Vasquez acquired a hospital-based infection, tuberculosis. TB is caused by bacteria that affects the lungs. It is a highly contagious communicable disease which is spread from person to person through the air and has a history of engendering fear of the disease and those with it. This fear often leads to stigmatization of patients who have recovered from a TB infection. Vasquez became extremely ill and was sequestered in her home for an additional two weeks. As a result of these medical complications, Vasquez needed to take additional leave time from work, which the County granted. Vasquez eventually recovered and both her healthcare provider and government health officials released her to return to work with minimal restrictions on January 7, 2013.

When Vasquez returned to work, she was able to perform her job as a Collection Specialist with reasonable accommodation. Nevertheless, she was involuntarily transferred to a new position in the "Hot Checks" Unit of the County Attorney's office. According to Vasquez, one of the assistant county attorneys informed her that she was not permitted to return to her position as Collection Specialist in the Bond Forfeiture Unit because one or more employees had threatened to either walk off the job if she returned to work or sue the County if they acquired TB. Vasquez also discovered that many of her co-workers and managers were aware that she had acquired TB. Vasquez did not disclose this information to anyone except when she was required to give periodic reports on her status and progress during her leave of absence. According to Vasquez, once her co-workers discovered she had acquired TB, they treated her differently and shunned her. Vasquez also alleged in her petition that after being transferred to the Hot Checks Unit, her supervisor, Ralph Girvin, threatened and intimidated her. Vasquez's husband filed a complaint regarding Girvin's conduct with the County Attorney's office. In February 2013, the County recorded a portion of a telephone conversation between Vasquez and

an individual who had allegedly written a hot check. After investigating the call, the County recommended she be discharged from her new position because she allegedly violated certain practices and procedures during the phone conversation. On February 20, 2013, the County informed Vasquez that she was terminated from her employment. However, the County gave her the option of resignation in lieu of termination. Vasquez elected to resign and signed a resignation letter prepared by the County.

### The Discrimination Charge

On March 12, 2013, Vasquez filed a charge of discrimination ("the original charge") in which she alleged the County discriminated against her based on age and disability. She filed it with the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission Civil Rights Division (TWC) received a copy. In the original charge, Vasquez checked the boxes for "age" and "disability" discrimination and included the following factual "particulars":

> I. On or around February 20, 2013 I was discharged from my position of Collection Specialist by Ralph Girvin-Supervisor, JoAnne Bernal-County Attorney, and Joe Gonzalez-Supervisory Attorney.
>
> II. No suitable reason given. I was told that my employment was terminated because I did not follow Hot Check Procedures.
>
> III. I believe that I was discriminated against because of my age, 54, and my disability in the manner described above in violation of the Age Discrimination in Employment Act of 1967, ADEA and in violation of Title I of the Americans with Disabilities Act of 1990, as amended (ADAAA).

Vasquez signed the original charge under oath. In July 2013, Vasquez filed an amended charge with the EEOC, as permitted by the Texas Labor Code. She wanted to add a claim for retaliation and for disclosure of confidential health information. The amended charge was her original charge with the word "amended" written at the top. She also checked the "retaliation" box and signed her initials next to the newly checked box. According to Vasquez, the EEOC additionally

-3-

instructed her to attach a statement to the amended charge describing her retaliation claim. That statement is entitled, "Amendment to EEOC Charge." Vasquez signed the statement, but did not do so under oath. However, she contends that when she initialed the retaliation box and attached her statement, it was her intent to reaffirm her signature that already appeared on the original charge. Specifically, she asserts that she reaffirmed her oath that the amendment she submitted was true, correct, and accurate. On May 30, 2014, the EEOC concluded its investigation into Vasquez's charge and issued its Dismissal and Notice of Rights.

### The Lawsuit

On June 10, 2014, Vasquez filed her original petition alleging three claims: (1) the County discriminated against her based on an actual disability and being "regarded as" disabled; (2) she was retaliated against for "taking time off for medical treatment, seeking a reasonable accommodation for her disability and for complaining about mistreatment by her supervisor"; and (3) the County violated Chapter 21 when it disclosed her confidential health information.

On October 6, 2014, the County filed a motion to dismiss under Rule 91a and a plea to the jurisdiction, arguing that the trial court lacked jurisdiction over Vasquez's entire lawsuit. The County alleged that the retaliation claim was barred because she failed to raise it in her original charge and failed to submit her amended charge to the EEOC "under oath," as required by Chapter 21. In response, Vasquez filed an amended petition containing the same causes of action asserted in her original petition and added a claim for age discrimination under state law. Vasquez asserted that she had recently submitted an affidavit to the EEOC, dated October 30, 2014, in support of her amended charge and the statement attached to it describing her retaliation claim. In her affidavit, she averred:

> I swear and affirm that the attached amendment to my EEOC charge was submitted under oath at the time I submitted it to the EEOC in July 2013. I reaffirmed my prior oath when I amended my EEOC charge.

> I am, however, re-affirming my oath at this time that the amendment to my EEOC charge is true, correct, and accurate and based upon personal knowledge. I therefore swear and affirm, under penalty of perjury, that the attached amendment to my EEOC charge is true, correct, and accurate and based upon personal knowledge.

The County then filed an amended motion to dismiss and amended plea to the jurisdiction. The amended plea contained the same arguments as the original plea, but added the arguments that Vasquez failed to exhaust her administrative remedies as to her "regarded as" disabled claim and her claim that she was denied a reasonable accommodation. On February 26, 2015, the trial court denied the amended plea and this interlocutory appeal follows.

## ISSUES FOR REVIEW

We will address the County's arguments in the following order: (1) Issues One and Two, pertaining to whether Vasquez exhausted her remedies concerning her retaliation claim and "regarded as" disabled claim; (2) Issues Three and Four, concerning Vasquez's actual disability pleadings; and (3) Issue Five, pertaining to whether Chapter 21 creates a cause of action for the disclosure of confidential health information. Finally, it is not necessary for us to address the County's third issue--whether Vasquez exhausted her administrative remedies and pled facts sufficient to state a claim that she was denied a reasonable accommodation--because in her brief she concedes that she cannot assert such a claim under the statute.

## PLEA TO THE JURISDICTION

A plea to the jurisdiction is a dilatory plea by which a party challenges the court's authority to determine the subject matter of a cause of action. *Bland Independent School Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *see Texas Department of Transp. v. Jones*, 8 S.W.3d 636, 637-38 (Tex. 1999). A governmental unit's sovereign immunity deprives a trial court of subject matter jurisdiction. *Texas Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *Tirado v. City of El Paso*, 361 S.W.3d 191, 194 (Tex.App.--El Paso 2012, no pet.); *see*

*Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 512 (Tex. 2012)("Sovereign immunity bars suits against the state and its entities, and this immunity remains intact unless surrendered in express and unequivocal terms by the statute's clear and unambiguous waiver."); *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010)("there can be no abrogation of governmental immunity without clear and unambiguous language indicating the Legislature's intent to do so"); *Jones*, 8 S.W.3d at 638. Accordingly, a governmental unit, such as El Paso County, properly raises the issue by a plea to the jurisdiction. *Id.* We review the issue of whether a trial court has subject matter jurisdiction *de novo*. *Miranda*, 133 S.W.3d at 226-27; *State Dept. of Highways and Public Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).

In asserting the plea, the plaintiff bears the burden of alleging facts that affirmatively prove the trial court has subject matter jurisdiction. *Texas Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). The pleadings must allege consent to suit either by reference to statute or express legislative permission. *Jones*, 8 S.W.3d at 638-39; *City of El Paso v. Chacon*, 148 S.W.3d 417, 421 (Tex.App.--El Paso 2004, pet. denied). To prevail on a plea to the jurisdiction, the defendant must be able to show an incurable jurisdictional defect exists on the face of the pleadings. *City of Austin v. Rangel*, 184 S.W.3d 377, 381 (Tex.App.--Austin 2006, no pet.), *citing MAG-T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617, 624 (Tex.App.--Austin 2005, pet. denied).

When a plea to the jurisdiction challenges the sufficiency of the pleadings, we determine whether the plaintiff has met her burden by pleading facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Miranda*, 133 S.W.3d at 226. In doing so, we construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent, and accept as true the

factual allegations in the pleadings. *Id.* at 226, 228. If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, then the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007); *Miranda*, 133 S.W.3d at 226-27; *City of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). However, if the pleadings affirmatively negate the existence of the trial court's jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Miranda*, 133 S.W.3d at 226-27.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties to the extent necessary to resolve the jurisdictional issues raised, just as the district court is required to do. *Miranda*, 133 S.W.3d at 227, *citing Bland Ind. Sch. Dist.*, 34 S.W.3d at 555. Where a plea to the jurisdiction includes evidence, and the jurisdictional challenge implicates the merits of the plaintiff's cause of action, the trial court will review the relevant evidence to determine whether a fact issue exists. *Miranda*, 133 S.W.3d at 227. If the evidence illustrates a fact question regarding the jurisdictional issue, a plea to the jurisdiction may not be granted and the fact finder should resolve the fact issue. *Id.* at 228. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the plea to the jurisdiction may be ruled on as a matter of law. *Id.*

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

In its first point of error, the County argues that Vasquez failed to exhaust her administrative remedies for her retaliation claim, thus depriving the trial court of subject matter jurisdiction. In its second issue, the County similarly contends that Vasquez failed to exhaust her administrative remedies concerning her "regarded as" disability claim. Because both issues involve the exhaustion of remedies, we will address them together.

Chapter 21 of the Labor Code, also known as the Texas Commission on Human Rights Act (TCHRA), deals with employment discrimination. TEX.LAB.CODE ANN. §§ 21.001-556 (West 2015). The Legislature established a limited waiver of immunity when it enacted Chapter 21. *Chatha*, 381 S.W.3d at 513 ("Although our precedent establishes that the TCHRA clearly and unambiguously waives sovereign immunity, it is a *limited* waiver of immunity.")[Emphasis in original]. This means that a claimant may bring suit against a governmental entity under TCHRA. *Id.*

However, a person claiming a violation of Chapter 21 must first exhaust the act's administrative remedies prior to bringing a civil action. *Smith v. University of Texas Southwestern Medical Center of Dallas*, 101 S.W.3d 185, 188 (Tex.App.--Dallas 2003, no pet.); *Wal-Mart Stores, Inc. v. Canchola*, 64 S.W.3d 524, 533 (Tex.App.--Corpus Christi 2001, pet. granted). The failure to exhaust administrative remedies is a jurisdictional defect which deprives the courts of subject-matter jurisdiction. *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 488 (Tex. 1991), *overruled in part on other grounds by In re United Servs. Auto Ass'n*, 307 S.W.3d 299, 310 (Tex. 2010); *City of Waco v. Lopez*, 259 S.W.3d 147, 149 (Tex. 2008). "To bring a lawsuit for unlawful employment practices, a plaintiff must first have filed an administrative [charge] with the EEOC [Equal Employment Opportunity Commission] or the TCHR [Texas Commission on Human Rights (TWC)]." *University of Tex. v. Poindexter*, 306 S.W.3d 798, 807 (Tex.App.--Austin 2009, no pet.).

## The Retaliation Claim

The County advances three arguments in support of its proposition that Vasquez failed to exhaust her administrative remedies: (1) the original charge did not raise retaliation; (2) the amended charge raising retaliation was not signed under oath; and (3) Vasquez failed to file her

retaliation claim with the TWC. Vasquez responds that her amended charge relates back to her original charge and that she dually-filed her charge with both the EEOC and TWC. [1]

Section 21.201(f) provides that "[a]n amendment to a complaint alleging additional facts that constitute unlawful employment practices relating to or arising from the subject matter of the original complaint relates back to the date the complaint was first received by the commission." TEX.LAB.CODE ANN. § 21.201(f). Generally, amendments that raise a new legal theory of discrimination do not relate back to the initial charge of discrimination, unless the facts supporting both the amendment and the initial charge are essentially the same. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003); *Poindexter*, 306 S.W.3d at 809. When analyzing an assertion that a claim relates back, we focus on the factual statement of the initial charge because that is the "crucial element." *See Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 322 (Tex.App.--Texarkana 2008, pet. denied), *quoting Preston v. Tex. Dep't of Family & Protective Servs.*, 222 Fed.Appx. 353, 356 (5th Cir. 2007). Since many complaints are made by aggrieved persons unfamiliar with the technicalities of formal pleadings, courts construe the initial charge liberally and "look slightly beyond its four corners, to its substance rather than its label." *See Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).

---

[1] Vasquez relies on *Norwood v. Litwin Engineers & Constructors, Inc.*, 962 S.W.2d 220 (Tex.App.--Houston [1st Dist.] 1998, pet. denied), for the proposition that both Texas and federal courts have held that a plaintiff exhausts her administrative remedies even when the administrative charge is unsigned and unsworn or where there is no notarization. We do not read *Norwood* to stand for such assertions. In *Norwood*, the charge at issue was not notarized, but was still signed under penalty of perjury, which the court held to be sufficient under Texas law. 962 S.W.2d at 222-23. Unlike the employee in *Norwood*, Vasquez's amended charge was neither sworn under oath nor signed under penalty of perjury. Therefore, we find Vasquez's reliance on Norwood misplaced. Vasquez also relies on *Edelman v. Lynchburg College*, 535 U.S. 106, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002), for the argument that her amendment relates back to the date of her initial charge. The facts and legal concepts articulated in *Edelman*, however, are not analogous to the facts here. In *Edelman*, the plaintiff submitted an unsworn letter in support of his discrimination charge. *Id.* 535 U.S. at 109-110. Once the time period to file a charge expired, he amended his initial letter with a sworn charge of discrimination. The United State Supreme Court construed the federal "under oath" requirement for administrative charges to permit a relation back concept that "ensures that the lay complainant . . . will not risk forfeiting his rights inadvertently." *Id.* 535 U.S. at 115. Here, Vasquez filed her original charge under oath and now argues that her unsworn amended charge alleging retaliation should relate back to her original sworn charge. *Edelman* does not support such a contention.

However, courts will not construe the charge to include facts that were initially omitted. *See County of Travis ex rel. Hamilton v. Manion*, No. 03-11-00533-CV, 2012 WL 1839399, at *4 (Tex.App.--Austin May 17, 2012, no pet.)(mem. op.), *citing Harris v. Honda*, 213 Fed.Appx. 258, 261 (5th Cir. 2006). The charge must contain an adequate factual basis to put the employer on notice of the existence and nature of the claims against it. *See Santi v. University of Texas Health Science Center at Houston*, 312 S.W.3d 800, 805 (Tex.App.--Houston [1st Dist.] 2009, no pet.). A lawsuit under the Act will be limited in scope to only those claims that were included in a timely administrative charge and to factually related claims that could reasonably be expected to grow out of the agency's investigation of the claims stated in the charge. *See City of Sugar Land v. Kaplan*, 449 S.W.3d 577, 581-82 (Tex.App.--Houston [14th Dist.] 2014, no pet.); *Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 475-76 (Tex.App.--El Paso 2013, pet. denied).

In *Manning*, 332 F.3d at 876, the plaintiff, after being passed over for a promotion, filed an EEOC complaint alleging race and gender discrimination. After consulting with an attorney who noted the plaintiff's speech impediment, the plaintiff added disability claims to his earlier claims. *Id.* at 876-77. The Fifth Circuit held that the plaintiff failed to allege sufficient facts in the initial charge to provide the defendant with the requisite notice of the added disability claim. *Id.* at 879. The court noted that the issue was not whether the employee added any facts when he amended the charge, but whether the employee already included sufficient facts to put the employer on notice that the employee might have additional allegations of discrimination. *Id.*

Similarly, in *Altman v. Key Energy Services, LLC*, No. 2:11-CV-00495-JRG, 2012 WL 4033336, at *1 (E.D.Tex. Sept. 12, 2012), an employee filed an amendment beyond the 300-day window. The amendment mentioned for the first time a disability discrimination claim. *Id.* at *2. The court determined that the amendment could not properly relate back to the initial charge.

*Id.* at *4. "To do otherwise would fly in the face of the public policy promoting fair notice to the employer, who must then defend against a previously unasserted claim." *Id.*

In *Poindexter*, 306 S.W.3d at 809, the plaintiff similarly argued that the "relation back" doctrine saved her retaliation charge. *Id.* at 809. Poindexter's original complaint alleged only racial discrimination. *Id.* at 804. A year and a half later, she filed an amendment to the charge, alleging retaliation. *Id.* at 804, 808-09. The court explained that "[t]he key to this doctrine is that the 'amendment' . . . must relate to or arise from the subject matter of the original complaint." *Id.* at 809. In doing so, the court held that Poindexter's retaliation allegations did not relate to or arise from the subject matter of her earlier disparate-treatment complaint. *Id.* at 809.

But in *Sanchez v. Standard Brands, Inc.*, the court ruled that the plaintiff was not barred from bringing additional claims of discrimination based on national origin and gender, which were first raised by an amendment made after the 300-day window had closed. 431 F.2d 455 (5th Cir. 1970). The initial charge read:

> My complaint was that my boss lady hit me at my rear end and about a month before that I hurt my thumb and was out of work for seven days and the Company didn't pay me. I hurt my thumb at work.

*Id.* at 458. The plaintiff's amendment provided:

> I was discriminated against by Standard Brands, Inc. because of my national origin and sex. My supervisor became very abusive toward me and constantly harrassed [sic] me on my job. She would rush me and one day she caused me to hurt my thumb. I lost 7 days of work and the company would not pay me for my lost time. On another occasion my Supervisor struck me on my buttocks with her hand and accused me of doing my work wrong, rather than argue with her I told her husband (the plant manager) I was going home. When I returned the next day my supervisor told me she did not need me any more and fired me. My supervisor seemed most [sic] abrupt and vengeful against Negro and Mexican American women than with Anglo women.

*Id.* at 459. Clearly, the plaintiff's facts contained in her amendment related to or arose from the facts alleged in her initial charge, thereby activating Section 21.201(f). *Id.* at 458.

Moreover, in *Lopez v. Texas State University*, 368 S.W.3d 695, 702 (Tex.App.--Austin 2012, pet. denied), the issue was whether Lopez's race-discrimination and retaliation claims asserted in her lawsuit fell within the scope of her administrative charge. Lopez checked only the sex and national-origin discrimination boxes and referred to her national origin as "Hispanic." *Id.* The court articulated the Fifth Circuit's reasoning discussed above to focus on Lopez's factual statement contained in her charge. The narrative portion of Lopez's charge stated that she believed she was discriminated against because she was Hispanic. *Id.* The court found this aspect of her charge to be instructive and concluded that Lopez's race-discrimination claim could have reasonably given rise to an administrative investigation of discrimination based on both national origin and race even though Lopez checked only the box labeled "national origin" on the EEOC charge. *Id.* at 703; *but see City of Sugar Land*, 449 S.W.3d at 581-82 (finding that plaintiff's attempted disability claim did not relate to or arise from the same subject matter of original charge where original charge only claimed that plaintiff was unlawfully terminated because he was the "oldest employee" in his department).

Several courts have recognized that the line between race and national-origin discrimination is difficult to draw and a particular national origin can often be reasonably understood to indicate a particular race or color. *City of Sugar Land*, 449 S.W.3d at 702; *Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 923 (7th Cir. 2007)(noting uncertainty about what constitutes race versus national-origin discrimination under Title VII); *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003)("[B]ecause racial categories may overlap significantly with nationality or ethnicity, 'the line between discrimination on account of race and discrimination on account of national origin may be so thin as to be indiscernible' or at least sufficiently blurred

so that courts may infer that both types of discrimination would fall within the reasonable scope of ensuing EEOC investigation for exhaustion purposes.")[Citations omitted]. Therefore, it is clear to see why such courts would conclude that a race discrimination claim may reasonably be expected to grow out of a national-origin discrimination claim and vice-versa.

However, we cannot say the same for Vasquez's retaliation claim. Retaliation, age discrimination, and disability discrimination are all distinct concepts. *See Davis*, 62 S.W.3d at 894; *Simms*, 165 F.3d at 1327. There are no factual allegations contained in her original charge to implicate a claim for retaliation. Rather, her amendment raised a new legal theory, separate and distinct from her disability and age claims, thereby negating the application of the relation back doctrine. *See Manning*, 332 F.3d at 878. We conclude that Vasquez's retaliation claim does not relate to or arise from the same subject matter of her original charge such that she failed to exhaust her administrative. In doing so, we need not address the County's additional argument that Vasquez failed to submit her retaliation claim to the TWC. We sustain Issue One.

### The "Regarded As" Disabled Claim

Under Chapter 21, an individual need not have an actual physical impairment to state a claim, as long as that individual is "regarded as having such an impairment." TEX.LAB.CODE ANN. § 21.002(6); *see also Francis v. City of Meriden*, 129 F.3d 281, 284 (2d. Cir. 1997)(discussing the Americans with Disabilities Act (ADA)). An individual is covered by the "regarded as" prong of the definition of disability in TCHRA if she "has none of the impairments defined in [the definition of the term 'impairment'] but is treated by a covered entity as having a substantially limiting impairment. *Francis*, 129 F.3d at 284, *quoting* 29 C.F.R. § 1630.2(l) (2012)(involving the ADA). This language tracks the definition of disability under the ADA. *See* 42 U.S.C § 12102(1)(West 2015); *Davis v. City of Grapevine*, 188 S.W.3d 748, 759 (Tex.App.--Fort Worth 2006, pet. denied).

-13-

The County relies on *Silva v. Chertoff*, 512 F.Supp.2d 792, 819-20 (W.D. Tex. 2007), for the proposition that Vasquez did not exhaust her administrative remedies for her "regarded as" claim where her EEOC charge alleged discrimination only on the basis of an actual disability. *See also McBride v. Amer Technology, Inc.*, No. SA-12-CV-00489-DAE, 2013 WL 2541595, at *7 (W.D.Tex. 2013); *Mitchell v. Nat'l R.R. Passenger Corp.,* 407 F.Supp.2d 213, 238 n.31 (D.D.C.2005). In its reply brief, the County also contends that the "regarded as" disability claim is not reasonably expected to grow out of her actual disability claim.

The key question presented by the exhaustion argument is whether Vasquez's claim that she was "regarded as" disabled falls within the scope of her existing discrimination charge. This, in turn, depends on whether her allegations could have been "reasonably expected to grow out of [the] EEOC charge." *Dyer v. Wiregrass Hospice, L.L.C.*, 532 F.Supp.2d 933, 935 (M.D. Tenn. 2008), *citing Smith v. Ky. State Univ*., 97 Fed.Appx. 22, 26 (6th Cir. 2004); *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991). Vasquez's charge stated that "I was discriminated against because of my . . . disability in the manner described above in violation of . . . Title I of the Americans with Disabilities Act of 1990, as amended (ADAAA)." We agree with the *Dyer* court's line of reasoning: "As disability discrimination claims encompass both kinds of cases, it is reasonable to conclude that [Vasquez's] charge alleging disability discrimination can be expected to encompass the various statutory means by which [Vasquez] might establish such a claim, including the assertion that she was regarded as having an impairment." *Dyer*, 532 F.Supp.2d at 935-36.

The vast majority of district courts addressing this or substantially similar issues have reached the same conclusion, holding that the scope of an EEOC charge alleging disability discrimination extends to "regarded as" claims in addition to actual disability claims. *See, e.g., Pellack v. Thorek Hosp. & Med. Ctr.*, 9 F.Supp.2d 984, 989 (N.D.Ill. 1998)(holding that

"regarded as" claim is reasonably related to claim of discrimination on the basis of disability alleged in EEOC charge); *see also Anderson v. Foster Group*, 521 F.Supp.2d 758, 786 (N.D.Ill. 2007)(holding that "regarded as" claim was reasonably related to claim of discrimination on the basis of disability); *Larimer v. Int'l Bus. Machines, Corp.*, No. 02 C 3160, 2003 WL 21000382, at *15-16, (N.D.Ill. May 1, 2003); *Schlegel v. Berks Area Reading Trans. Auth.*, No. CIV.A. 01-6055, 2003 WL 21652173, at *4 (E.D.Pa. Jan. 9, 2003); *Sink v. Wal-Mart Stores, Inc.*, 147 F.Supp.2d 1085, 1091-92 (D.Kan. 2001); *Ogborn v. United Food & Commercial Workers, Local No. 881 and Powell*, No. 98 C 4623, 2000 WL 1409855, at *7-8 (N.D.Ill. Sept. 25, 2000), *aff'd sub nom. Ogborn v. United Food & Commercial Workers Union*, Local No. 881, 305 F.3d 763 (7th Cir. 2002); *Smith v. Warren R. Gregory & Sons, Inc.*, No. IP99-1490-C-B/S, 2001 WL 1691640, at *6-7 (S.D.Ind. Nov. 21, 2001)(permitting plaintiff to argue that employer "regarded [him] as disabled" despite "bare-bones" EEOC charge because allegation in EEOC charge that plaintiff had been treated unfavorably based on disability triggered inquiry into various definitions of disability, including the "regarded as" definition); *O'Rourke v. Roadway Express, Inc.*, No. 99 C 50059, 2000 WL 1209423, at *4 n.7 (N.D.Ill. Aug. 21, 2000); *Lane v. Wal-Mart Stores East, Inc.*, 69 F.Supp.2d 749, 756 (D.Md. 1999); *Baker v. Chicago Park Dist.*, No. 98 C 4613, 1999 WL 519064, at *5-6 (N.D.Ill. July 16, 1999).

The converse is equally true. Courts have also held that a plaintiff similarly exhausts her administrative remedies as to an actual disability claim when her charge only referred to a "regarded as" disabled claim. *See Williams v. AT&T, Inc.*, No. H-07-0559, 2009 WL 938495, at *11 n.4 (S.D.Tex. April 6, 2009)(overruling employer's motion to dismiss Williams' actual disability claim on grounds that Williams failed to exhaust his administrative remedies because his EEOC charge only asserted a "regarded as" disabled claim); *Mayers v. Washington Adventist Hospital*, 131 F.Supp.2d 743, 748 (D.Md. 2001)(finding that plaintiff's discrimination claim

based on actual disability fell within the scope of the EEOC charge that alleged only discrimination based on a perceived disability where the same allegations and facts included within the charge could reasonably support a claim asserting discrimination on the basis on an actual disability), *aff'd*, 22 Fed.Appx. 158 (4th Cir. 2001).

We believe the reasoning of these courts is sound. Because Vasquez's charge alleged discrimination based on her disability, her "regarded as" claim falls within the scope of her charge, and her exhaustion requirement is therefore satisfied. We overrule Issue Two.

## THE ACTUAL DISABILITY CLAIM

In its fourth point of error, the County urges that Vasquez's petition did not state claims sufficient to overcome the County's sovereign immunity. In response, Vasquez asserts that she specifically pled she was disabled due to her heart attack and TB.

An employee must establish a prima facie case of discrimination to show that the court has jurisdiction and that the County waived its immunity from suit under Chapter 21. *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136 (Tex. 2015)(noting that the waiver of immunity "extends only to those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder")(internal quotations omitted); *Mayfield v. Tarrant Regional Water District*, 467 S.W.3d 706, 711 (Tex.App.--El Paso 2015, no pet.) ("The legislature has waived governmental immunity for claims brought under the TCHRA provided the plaintiffs plead the prima facie elements of their claims."); *Mission Consol. Independent School Dist. v. Garcia*, 372 S.W.3d 629, 635-36 (Tex. 2012)("In a suit against a governmental employer, the prima facie case implicates both the merits of the claim *and* the court's jurisdiction because of the doctrine of sovereign immunity."). [Emphasis in original]. If the employee cannot establish a prima facie case and cannot plead the elements of a claim under

Chapter 21 in her pleading, "that failure . . . means the court has no jurisdiction and the claim should be dismissed." *Id.* at 637, *citing State v. Lueck*, 290 S.W.3d 876 (Tex. 2009).

To prevail on a disability discrimination claim, a plaintiff must show that (1) she has a "disability," (2) she is "qualified" for the job she seeks, and (3) she suffered an adverse employment decision because of her disability. *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996); *Hagwood v. County of El Paso*, 408 S.W.3d 515, 523 (Tex.App.--El Paso 2013, no pet.); *Davis v. City of Grapevine*, 188 S.W.3d 748, 757 (Tex.App.--Fort Worth 2006, pet. denied). A disability is defined as "a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment." TEX.LAB.CODE ANN. § 21.002(6). Courts interpret a "major life activity" as the equivalent of "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Union Carbide Corp. v. Mayfield*, 66 S.W.3d 354, 360 (Tex.App.--Corpus Christi 2001, pet. denied). The Texas Supreme Court has stated that a disability as contemplated by TCHRA "must be one which is generally perceived as severely limiting [the plaintiff] in performing work-related functions in general." *Chevron Corp. v. Redmon*, 745 S.W.2d 314, 318 (Tex. 1987).

In determining if a person is substantially limited in a major life activity, we consider: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. *Union Carbide Corp.*, 66 S.W.3d at 360; *Garcia v. Allen*, 28 S.W.3d 587, 596 (Tex.App.--Corpus Christi 2000, pet. denied); *Norwood v. Litwin Eng'rs & Constructors, Inc.*, 962 S.W.2d 220, 224 (Tex.App.--Houston [1st Dist.] 1998, pet. denied), *quoting* 29 C.F.R. § 1630.2(j)(2)(2011). To be considered a disability, the "impairment's impact must . . . be permanent or long-term." *Toyota Motor Manufacturing,*

*Kentucky, Inc. v. Williams*, 534 U.S. 184, 198, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002); *see also Hamilton v. Southwestern Bell Tel. Co.*, 136 F.3d 1047, 1051 (5th Cir. 1998)("We have noted that '[t]he EEOC regulations provide that temporary, non-chronic impairments of short duration, with little or no permanent long-term impact, are usually not disabilities.'"), *quoting Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996); *Garcia v. Allen*, 28 S.W.3d 587, 596 (Tex.App.--Corpus Christi 2000, pet. denied)("In determining if one is substantially limited in a major life activity," one factor to consider is the "duration or expected duration of the impairment.").

More importantly, under the actual disability prong, the relevant determination is whether the plaintiff was disabled at the time of the adverse employment action. *Tex. Dep't of Family and Protective Servs. v. Howard*, 429 S.W.3d 782, 787-89 (Tex.App.--Dallas 2014, pet. denied) (stating that once the employer shows the employee was not disabled at the time of discriminatory act, the employee must present evidence that she was in fact disabled); *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 618 (5th Cir. 2009); *Samuels v. Kansas City Mo. Sch. Dist.*, 437 F.3d 797, 802 (8th Cir. 2006); *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 316 (6th Cir. 2001); *Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir. 2000)(holding that a disability must be evaluated at the time of the challenged employment action).

Vasquez's amended petition provides in relevant part:

However, on the day she returned to work in January 2013, at age 54, Vasquez was informed by Joe Gonzalez, an Assistant County Attorney, that she would not be permitted to work in the Bond Forfeiture Unit because one or more employees had threatened to either walk off the job if Vasquez returned to work or sue the County if they acquired TB from Vasquez.

Vasquez was further told by Mr. Gonzalez upon her return that she would be transferred to a new position in the 'Hot Checks' Unit of the County Attorney's office.

Vasquez was therefore removed from her longstanding job in the Bond Forfeiture Unit for an illegitimate reason--namely, due to fear and stigma as a result of

-18-

having TB. Vasquez *was not actually disabled at the time, but rather, was regarded and/or perceived as disabled by management, her supervisors, and co-workers* at the County.

[Emphasis added]. Vasquez failed to plead sufficient facts to establish a prima facie case of disability discrimination. Instead, she has affirmatively established that she cannot prove a crucial element of her disability claim--that she suffered from a disability at the time of the County's alleged adverse actions. Not only had she recovered from her heart attack, government health officials had released her to resume work because she successfully completed her course of treatment for TB. *Garcia*, 372 S.W.3d at 637 (explaining that the Legislature waives immunity only for those suits where the plaintiff actually alleges a violation of TCHRA by pleading facts that state a claim thereunder and a failure to establish a prima facie case "means the court has no jurisdiction and the claim should be dismissed"). We sustain Issue Four. Having sustained Issue Four, we must likewise sustain Issue Three challenging Vasquez's allegations that she was denied a reasonable accommodation. Chapter 21 only requires employers to accommodate disabled employees. *Hagood v. County of El Paso*, 408 S.W.3d 515, 524 (Tex.App.--El Paso 2013, no pet.)("Under a reasonable accommodation claim, a plaintiff must show that: (1) he has a "disability;" (2) an employer covered by the statute had notice of his disability; (3) with "reasonable accommodations" he could perform the "essential functions" of his position; and (4) the employer refused to make such accommodations.").

## DISCLOSURE OF CONFIDENTIAL HEALTH INFORMATION

In considering the fifth point of error, we must determine whether Vasquez properly pled a cause of action for disclosure of confidential health information. The County contends that because no such cause of action exists, it cannot have waived its immunity to suit under Chapter 21. We agree.

Vasquez responds that federal law supports her assertion that a valid cause of action for

disclosure of confidential health information exists under Chapter 21. Several federal courts have held that a claim for disclosure of confidential health information constitutes an independent cause of action for disability discrimination if the disclosure results in a tangible injury to the plaintiff. *See Cossette v. Minnesota Power & Light*, 188 F.3d 964, 970 (8th Cir. 2007)(stating that a plaintiff must show that the disclosed information was confidential and that he suffered some kind of tangible injury as a result of the disclosure.); *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 963 (10th Cir. 2002)(A claimant may recover compensatory damages for tangible injury legally and proximately caused by disclosure of confidential personal health information.). To solidify her argument, Vasquez points us to one of the underlying purposes of Chapter 21, which is to provide for the "execution of the policies" of the ADA.

However we are to look to federal law only when the two statutes are analogous. *Prairie View A&M University v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012). We cannot conclude that Chapter 21 and the ADA are analogous for purposes of creating a disclosure of confidential health information cause of action. The ADA addresses an employer's obligations to keep certain employee information confidential. *See* 42 U.S.C. § 12112(d)(West 2015). It requires all information regarding the medical condition or history of an applicant or employee to be maintained on separate forms and in separate files and to be treated as confidential medical records. *Id.* The confidentiality requirement also applies to all applicants and employees and not just those with disabilities. *Cossette*, 188 F.3d at 969. No such provision exists within Chapter 21. For this reason, we find Vasquez's reliance on federal law misplaced. Accordingly, we cannot incorporate such a provision, as Vasquez urges us to do, that our Legislature has not included in the statute. *See Chatha*, 381 S.W.3d at 507-09 (explaining that Chapter 21 does not incorporate the federal Lilly Ledbetter Act where the two statutes contained different statutory

language).  We sustain Issue Five.

## CONCLUSION

Having sustained Issues One, Three, Four, and Five, we reverse and render judgment granting the plea to the jurisdiction with regard to claims of retaliation, actual disability, denial of a reasonable accommodation, and disclosure of confidential health information.  We remand the cause for consideration of Vasquez's "regarded as" disabled claim.

May 5, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.